GEORGE S. WILBUR & others *vs.* CITY OF NEWTON.

Middlesex.    October 4, 1938. — December 29, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Zoning. Constitutional Law,* Zoning, Police power. *Equity Jurisdiction,*
To enforce zoning law. *Words,* "Building," "Temporary."

The facts justified the conclusions that a city zoning ordinance placing a
two thousand acre tract in a residential district and prohibiting the
construction therein of new buildings for industrial or commercial
purposes was reasonable, was in accordance with the general character
of the tract and the trend of its development probable when the ordi-
nance was passed and subsequently, was not shown to have no substan-
tial relation to the public interest, and was constitutional, as applied
to prevent the continuance on land in the tract of a "sand hopper,"
engine house, and scale house, erected after the adoption of the ordi-
nance and used in connection with the removal and sale of sand and
gravel from that and other land, such removal itself being permissible
under the ordinance.

The fact that, at the time when a zoning ordinance was adopted by a
city prohibiting the erection of new buildings for commercial pur-
poses in a private residence district, a business of a commercial nature
already was established on land in the district did not legalize build-
ings, not of a temporary character, thereafter erected on such land
for carrying on that business.

No impropriety appeared in the denial of an application for a renewal
permit under a zoning ordinance for continued use of buildings on
land in connection with a sand and gravel business conducted there,
where it was found that the denial was not arbitrary, capricious, or
in bad faith.

In a suit against a city to enjoin the enforcement of a zoning ordinance
as invalid as applied to the plaintiff's buildings, the city, upon facts
found showing the validity of the ordinance and requiring that the
bill be dismissed, was entitled to a decree granting its counterclaim
that the plaintiff be restrained from violating the ordinance.

BILL IN EQUITY, filed in the Superior Court on September
25, 1936.

A report by a master was confirmed, and a final decree
dismissing the bill and counterclaim was entered by order
of *M. Morton,* J. All parties appealed.

*A. V. A. Thomason,* (*C. S. Hartwell* with him,) for the
plaintiffs.

*W. G. Guernsey,* for the defendant.

QUA, J.   The plaintiff Wilbur and the plaintiffs Esty are the owners, respectively, of two adjoining parcels of land situated in the extreme southerly part of Newton.   The Wilbur tract contains about seventy-one acres, and the Esty tract about fifty-eight acres.   These are the same lands to which reference is made in *Wilbur* v. *Newton*, 301 Mass. 97.   They lie southwest of Dedham Street and, roughly speaking, between Charles River and the boundary of that part of Boston known as West Roxbury.· The plaintiff Highland Sand & Gravel Company, Inc., owns and since 1928 has operated upon the Wilbur land a plant for processing sand and gravel.   Great quantities of these materials have been taken from the Wilbur land, but they are now obtained principally from the Esty land and from land of others beyond the Boston line.

The object of this bill is to restrain the city from enforcing its zoning ordinance as applied to the Wilbur and Esty lands and from interfering with the sand and gravel business there carried on.   The defendant seeks by counterclaim to restrain the plaintiffs other than the Estys from using the buildings on the Wilbur land as a sand and gravel plant.··· Somewhat broader claims have been abandoned.

The plaintiffs contend that the zoning ordinance is unconstitutional and invalid as applied to their lands.   On this point binding precedents establish the test to be whether the provisions of the ordinance as applied to the plaintiffs and their properties "are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."   *Euclid* v.· *Ambler Realty Co.* 272 U. S. 365, 395.   *Nectow* v. *Cambridge*, 260 Mass. 441, 448, *Nectow* v. *Cambridge*, 277 U. S. 183, 188.   In our opinion such a conclusion would be unjustified in this case.

The master has made careful and comprehensive findings of facts.   In 1922 the city first enacted its zoning ordinance, whereby an area of over two thousand acres, including the Wilbur and Esty lands, was zoned as a private residence district, and the construction of new buildings for any industry or trade or for any manufacturing or commercial purpose was prohibited.   Later amendments do not help

the plaintiffs. The master's ultimate conclusion is stated by him as follows: "Upon the understanding that the law does not require the city to establish its zoning districts upon the basis of the economic value of relatively small areas owned by individuals, but may establish such districts upon the basis of substantial areas provided such districts bear a rational relation to the health, morals, safety and general welfare of the public and may consider the public interest not only as it exists at the time of division, but also as it appears probable it will develop, I find, so far as it is a question of fact, that the zoning of the area of approximately 2,000 acres in the southerly part of Newton as a private or single residence district was and is reasonable and in accordance with its general character and probable trend at the start and with its development since then. The districting established in 1922 served the public interest in that it protected so much of the area as was already devoted to single residences for that type of residence and from encroachment of types of construction, forms of enterprise, and crowding undesirable in a single residence district. It preserved the area not then built upon for future use for single residence construction to the exclusion of construction not desirable in single residence districts in accordance with the probable trend and with the preferences of the city of Newton as expressed by its legislative action." He further finds as to both tracts that so far as it is a question of fact, the plaintiffs have not sustained the burden of proving that the inclusion of these lands in the single residence district bore no rational relation to the public interest, or that at the present time it is not reasonable to retain them in such district.

Nothing in the subsidiary findings requires us to reverse the master's conclusions. The "back" portions of both parcels, that is, the parts most distant from Dedham Street and nearest to the river, being the parts upon which the sand and gravel operations are carried on, reach into a glacial deposit of sand and gravel which extends along the banks of the Charles River in Newton, Needham, Boston and Dedham. This is practically the only available deposit

in metropolitan Boston. It is of limited depth. On the lands here involved, in so far as it has not been removed, it consists of sharp ridges and mounds interspersed with valleys, swampy places, and small water courses. Prior to 1928 these portions of the premises were not suitable for building, except at a very substantial expense for preparation of the land. The sale of gravel would aid in defraying that expense. In 1922 this rough land was more valuable for sand and gravel than for building. At the present time the Wilbur land seems to have been so graded as to leave the greater part of it fairly suitable for building. The Esty land is partially graded. Out of the two thousand acres zoned as a private residence district there is still an area of about six hundred acres bounded by Dedham Street, Nahanton Street, the river and the Boston line, including the Wilbur and Esty lands, upon which there are only five or six dwelling houses. On the other hand, the two thousand acre tract as a whole has been developing as a residence district. This is the only part of Newton which has not been built up. "It is, in general, admirably suited for residential use, being largely of a rolling character in the natural state, and within eight miles of the center of Boston. For ten years by far the greatest part of new construction in Newton has been in this area gradually approaching the southerly tip of the city in which the Wilbur and Esty properties lie." It "seems probable that the new construction of single houses will continue for a considerable period." Except for the six hundred acres above mentioned, "it is already firmly established in fact as a single residence district."

On this branch of the case the precise issue is whether it was, or is, so unreasonable and arbitrary to prohibit new buildings, other than residences, on or near the gravel bearing portions of the Wilbur and Esty lands as clearly to place such prohibition beyond the scope of legislative competency. No contention is now made in this case that the city can prevent the removal and sale of sand and gravel if no structures which violate the ordinance are erected or maintained. The sale of gravel was established as an existing use of both parcels of land to substantially the same extent as at present

before an amendment to the ordinance in 1935 for the first time regulated land use as distinguished from the erection and maintenance of buildings. Existing uses to the existing extent are preserved by G. L. (Ter. Ed.) c. 40, § 26, as it now stands after the passage of St. 1933, c. 269, § 1.

Plainly, it was proper for the city in 1922, and it is proper now, to take into account the probable future development of the entire region. The effect upon the future residential development of the neighborhood. which might then have been anticipated from the erection of nonconforming buildings can best be appreciated by regarding the character and probable effect of the nonconforming buildings which have in fact been erected and maintained on the Wilbur land. The "sand hopper" is a steel frame structure boarded in with planking and roofed over. It is about sixty feet long, thirty feet wide, and eighty feet high. It contains screening machinery and storage space and is equipped with a stone crusher and a system of conveyor belts. There are also a galvanized iron engine house twenty by thirty feet in size and a small galvanized iron scale house. These buildings have made possible the carrying on of a large business which has now continued since 1928. The daily output has varied from a minimum of twenty to a maximum of three hundred fifty truck loads of eight tons each. For the last five years the average annual production has been about one hundred fifty thousand tons. Gravel is also stored upon the Wilbur land near the plant.

Even though in general the construction of private dwellings is still at a substantial distance from the gravel plant, and the excavation of gravel "has little effect on any property now occupied," the presence of such unsightly buildings as are on the Wilbur land, adapted solely for the uses described, together with the heavy traffic and noise which are to be expected, may reasonably be deemed detrimental to a neighborhood of homes and likely to obstruct the full normal development of surrounding lands for the purpose for which the city could reasonably judge them to be best suited and most useful to the community. This concerns the public welfare. Exclusion of such buildings from such

neighborhoods is within the declared objects of the statute under the authority of which the city enacted its ordinance. G. L. (Ter. Ed.) c. 40, § 25, as amended by St. 1933, c. 269, § 1. Action to that end taken reasonably and in good faith is not unconstitutional. Art. 60 of the Amendments to the Constitution of Massachusetts. *Opinion of the Justices*, 234 Mass. 597. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52. *Brett* v. *Building Commissioner of Brookline*, 250 Mass. 73. *Lexington* v. *Govenar*, 295 Mass. 31, 36. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. This remains true even though some land may be included which is far more valuable to its owners for other uses than for those for which the vicinity as a whole is reserved. *Inspector of Buildings of Lowell* v. *Stoklosa*, 250 Mass. 52, 61. *Spector* v. *Building Inspector of Milton*, 250 Mass. 63, 70. *Hadacheck* v. *Los Angeles*, 239 U. S. 394, 410. See *Prusik* v. *Board of Appeal of Boston*, 262 Mass. 451, 457; *Phillips* v. *Board of Appeals of Springfield*, 286 Mass. 469.

The "sand hopper" could properly be found to be a "building." *Jenney* v. *Hynes*, 282 Mass. 182, 187, 190. *Cochran* v. *Roemer*, 287 Mass. 500, 509. All the buildings violated the ordinance. The existence of a nonconforming use of the land when the ordinance was enacted did not, either under its original or its amended terms, legalize new buildings in connection with that use. In that respect the ordinance differs from the statute considered in *Cochran* v. *Roemer, supra.* There is nothing to the contrary in G. L. c. 40, § 29, as amended by St. 1925, c. 116, § 3, or in the present G. L. (Ter. Ed.) c. 40, § 26, introduced by St. 1933, c. 269, § 1. These buildings, which have now been standing about a decade, and which are apparently capable of indefinite future use in processing gravel from various parcels, including some over the Boston line, can hardly be considered "temporary," as the plaintiffs argue. Even if they are temporary in the sense that they can be removed and set up elsewhere, such structures are not exempted from the prohibition of the statute or the ordinance. We are not here considering structures set up for use as implements in connection with the immediately contemplated

construction of residences permitted by the ordinance. Nor are we called upon to decide what use an owner could make of a valuable mine discovered in a residence area. To all intents and purposes the buildings here in question constituted a permanent industrial plant, similar to the brick yard in *Hadacheck* v. *Los Angeles*, 239 U. S. 394.

The ordinance as amended provides for the granting by the board of aldermen of permits for the construction and use of buildings, structures or lands for the removal of sod, loam, subsoil, sand or gravel under "such conditions and limitations of time as may be necessary to protect the neighborhood." The validity of this provision has not been drawn in question. For the purposes of this decision it may be assumed to be valid. See as to boards of appeal and "variance" G. L. (Ter. Ed.) c. 40, § 30, as inserted by St. 1933, c. 269, § 1, and as amended by St. 1935, c. 388; *LaMontagne* v. *Kenney*, 288 Mass. 363. For several years Wilbur had obtained permits. In August, 1936, he applied for a renewal, which the aldermen refused. There is no finding that this refusal was "because . . . [Wilbur] declined to contract with the city," as he asserts in his brief. We do not, however, imply that the city could not, in granting a permit for these buildings, impose reasonable conditions to protect the neighborhood as to the manner in which, through their use, the gravel business should be conducted on the premises. Wilbur had specifically represented the buildings to be temporary structures. Yet they had been operated continuously since 1928, and gravel was coming to them from lands of other owners. The history of this enterprise may have persuaded the aldermen that Wilbur was not so much interested in levelling his own land for ultimate building of private residences as he was in the permanent operation of a gravel processing business. At any rate, under the ordinance, it was for the aldermen to determine whether the permit should be renewed, and the master finds that they "did not act arbitrarily, capriciously or in bad faith."

The plaintiffs' exceptions to the master's report, in so far as they have been argued, cannot be sustained. Numbers

(2) to (9) inclusive relate to questions of evidence and rest wholly upon the assertion of the plaintiffs. The report does not disclose what in fact took place at the hearing. *Cook* v. *Scheffreen*, 215 Mass. 444, 447. It does not appear that the plaintiffs moved to recommit in order to obtain such disclosure. The proper method of saving questions of this kind is fully explained in *Pearson* v. *Mulloney*, 289 Mass. 508, 512. Number (10) is immaterial, as the fact which the plaintiffs contend should have been reported is admitted in the defendant's answer. Number (14) relates to the master's failure to find certain facts. There is nothing to show that the state of the evidence required him to find these facts. *Greenhood* v. *Richardson*, 226 Mass. 208. Number (18) refers to a ruling which accords with our own views as expressed in this opinion. The remaining exceptions are to findings which the master made. They are not inconsistent with other findings, and in the absence of the evidence they must stand. In so far as the evidence has been summarized by the master in accordance with Rule 90 of the Superior Court (1932), it tends to support the findings.

The interlocutory decree confirming the master's report is affirmed. The final decree is to be modified by granting to the city against the plaintiffs Wilbur and Highland Sand & Gravel Company, Inc., as to the buildings only, the relief prayed for in its counterclaim, and dismissing the counterclaim as to the plaintiffs Esty, and as so modified the final decree is affirmed. No costs are allowed on these appeals.

*Ordered accordingly.*