GEORGE S. WILBUR & another *vs.* CITY OF NEWTON.

Middlesex. October 10, 1940. — October 31, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

Contempt. *Equity Pleading and Practice,* Proceedings for contempt, Decree, Report. *Words,* "Buildings," "Structures."

Even though a judge of the Superior Court who heard a petition for contempt caused the entry of a decree unequivocally adjudging the respondent in contempt, if in the decree he continued the case for sentence, the decree remained interlocutory and the case still was subject to report to this court under G. L. (Ter. Ed.) c. 214, § 30.

A final decree after rescript from this court in a suit in equity must be interpreted in the light of the opinion which accompanied the rescript.

A final decree after rescript, interpreted in the light of the opinion accompanying the rescript, meant that an injunction against the maintenance of "buildings" for certain purposes applied to a sand hopper even after its roof and some of the outside boarding at the top had been removed.

BILL IN EQUITY, filed in the Superior Court on September 25, 1936.

On appeals from a decree formerly entered, this court, in a decision reported 302 Mass. 38, ordered the entry of a decree of injunction against the plaintiffs based on the defendant's counterclaim. After the entry of such decree, the defendant on December 4, 1939, filed a petition that the plaintiffs be adjudged in contempt for failure to comply with its requirements. After a hearing and finding of facts, *Good,* J., reported the matter of contempt to this court.

*A. V. A. Thomason,* (*C. S. Hartwell* with him,) for the plaintiffs.

*W. G. Guernsey,* for the defendant.

DOLAN, J. This is a petition in the above entitled suit in equity under which the defendant in that suit seeks to have the plaintiffs therein "committed" for contempt for failure to comply with the terms of the final decree after rescript. *Wilbur* v. *Newton,* 302 Mass. 38.

On January 11, 1940, the judge entered a decree adjudging the plaintiffs in contempt, and continued the proceeding for sentence. On May 17, 1940, at the request of the plaintiffs, the judge in the language of G. L. (Ter. Ed.) c. 214, § 30, reported for the determination of this court the question whether the plaintiffs have complied with the final decree after rescript. While the decree entered by the judge in the present proceeding adjudging the plaintiffs in contempt is plain and unequivocal, yet, since he continued the case for sentence, the decree does not finally dispose of the case, and is to be deemed interlocutory in its nature, and hence the subject of report under G. L. (Ter. Ed.) c. 214, § 30. See *Cherry* v. *Cherry,* 253 Mass. 172, 176.

The final decree after rescript was entered on March 17, 1939. So far as material it reads as follows: "That the plaintiffs George S. Wilbur and the Highland Sand and Gravel Company, Inc., be and hereby are permanently enjoined and restrained, from and after sixty days from the date of the entry of this decree, from erecting, maintaining, using or operating buildings upon the land described in the plaintiffs' bill of complaint for the purposes of or in con-

nection with the removal of sand and gravel from or sale thereof upon said premises."

At the trial of this proceeding the defendant conceded that after the entry of final decree the plaintiffs took down the "scale house" and "pump house" and removed the roof of the sand hopper and some of the boarding "at the very top that protected the machinery." The parties agreed that the sole issue was whether the so called sand hopper or hopper is a building within the meaning of the final decree after rescript or is now a structure in compliance with that decree. Photographs of the sand hopper, showing its condition at the time of entry of final decree and its condition after the roof and certain top boards had been removed, were received in evidence and are reproduced in the record. There was also evidence descriptive of the purposes and construction of the sand hopper, known "in the trade" as a screening tower, and there was testimony by a building contractor "that a building is a structure, but that not all structures are buildings," that as distinguished from a building a structure does not have a roof and that the sand hopper in its present condition is not a building.

The plaintiffs contend that the "structure which is the subject of this dispute is a screening tower consisting of a steel frame carried up to support the screening machinery up in the air; that it is simply the steel work necessary to support the screens and the wash box; that it is a part of one big machine for screening sand and gravel; that there is a series of stage floors around the machinery for the men to walk across; that there is no floor in the structure"; that "Such planks as are shown in the sides of the structure . . . are planks which have been 'clipped' into the steel frame, and are not fixed, to form open bins at the bottom"; that "these planks do not add to the efficacy of the screening tower"; and that it is not a building and has no buildings on it.

The final decree after rescript may not be read alone, but must be interpreted in the light of the opinion in accordance with which the rescript was issued. Thus considered it is

manifest that the sand hopper has been determined to be a building within the meaning of the word "buildings" as used in the final decree after rescript. In the opinion it is said, in part: "The 'sand hopper' is a steel frame structure boarded in with planking and roofed over. It is about sixty feet long, thirty feet wide, and eighty feet high. It contains screening machinery and storage space and is equipped with a stone crusher and a system of conveyor belts. There are also a galvanized iron engine house twenty by thirty feet in size and a small galvanized iron scale house. These buildings have made possible the carrying on of a large business which has now continued since 1928. . . . the presence of such unsightly buildings as are on the Wilbur land, adapted solely for the uses described, together with the heavy traffic and noise which are to be expected, may reasonably be deemed detrimental to a neighborhood of homes . . . . Exclusion of such buildings from such neighborhoods is within the declared objects of the statute under the authority of which the city enacted its ordinance. . . . The 'sand hopper' could properly be found to be a 'building.' . . . such structures are not exempted from the prohibition of the statute or the ordinance." *Wilbur* v. *Newton*, 302 Mass. 38, 42–43. It is obvious that in speaking of the engine house, scale house and sand hopper as "buildings" and also as "structures," this court was using these terms synonymously and not in a different sense, and that the structures involved, including the sand hopper, were held to be buildings within the meaning of the zoning law, and that their further maintenance was directed to be enjoined.

We are of opinion that the judge could find that the removal of the roof and some of the top boards of the sand hopper after the entry of final decree after rescript did not change its character as a building within the meaning of that decree. *Jenney* v. *Hynes*, 285 Mass. 332. *Cochran* v. *Roemer*, 287 Mass. 500. The photographs showing its condition before and after final decree would justify the judge in concluding that the only effect of the changes was to make the building more unsightly after they were made than it was before they were made.

It is not contended that in its present condition the use and operation of the sand hopper for the removal of sand or gravel from the plaintiffs' premises are not the same as before the entry of final decree after rescript. Such use and operation are specifically enjoined by that decree.

*Interlocutory decree affirmed.*