JAMES J. CAIRES & others vs. BUILDING COMMISSIONER
OF HINGHAM.

Plymouth. November 3, 1948. — January 5, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Zoning. Hingham. Constitutional Law*, Police power, Zoning. *Municipal Corporations*, Town meeting. *Evidence*, Presumptions and burden of proof.

A regulation of property by a zoning by-law must be held justified as an exercise of the police power in furtherance of the objects set forth in G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, unless it is shown to have no reasonable relation to any of such objects.

A report made by a town's planning board as to a proposed amendment of its zoning by-law pursuant to G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1941, c. 320, is advisory only and is not binding upon the voters at the town meeting before which the proposed amendment comes for action.

A vote at a town meeting amending the town's zoning by-law was not invalidated by the mere fact that one who would benefit personally by the amendment was active in initiating it and in advocating it by newspaper advertisements and pamphlets and by addressing the town meeting.

A certain amendment of the zoning by-law of Hingham, a town devoted mainly to residences, changing from residential to business the zoning of a tract of about ten acres which, although located in a residential area some distance from the nearest business section, had been used for railroad purposes since long before the adoption of the by-law and contained side tracks available for business establishments locating therein including a hay and grain concern and a lumber concern desiring to locate therein immediately, was not shown to be invalid on the ground that it had no reasonable relation to any of the objects constituting the bases for zoning by-laws.

A vote at a town meeting, amending the town's zoning by-law "by taking out of the residence district and placing in the business district . . . the whole or any part of the following described area: . . . [description of the area] so that thereafter said area shall be used for business district uses," must be construed as changing the zoning of the whole area.

PETITION for a writ of mandamus, filed in the Superior Court on April 29, 1947.

The vote of the town of Hingham to make the amendment of its zoning by-law in question in the case was as

follows: "Voted, That the town amend the zoning laws adopted at the annual town meeting on March 10, 1941, as heretofore amended, by taking out of the residence district and placing in the business district as shown on the map part of said zoning law the whole or any part of the following described area: . . . [description] so that thereafter said area shall be used for business district uses as in said zoning law provided, and that the proper officers are hereby authorized and directed to cause the map of said by-law . . . to be altered to conform to the foregoing provisions."

The zoning by-law did not contain the provision, made permissible by St. 1941, c. 198, § 1, for an appeal to the zoning board of appeals "by any person aggrieved by any order or decision of the inspector of buildings or other administrative official in violation of" the by-law or zoning statutes.

The case was heard by *Warner*, J.

*A. E. Whittemore*, (*W. G. Howland* with him,) for the respondents.

*H. E. Magnuson*, for the petitioners.

RONAN, J. This controversy centers about the validity of an amendment to a zoning by-law of the town of Hingham. It comes here by an appeal by the respondent under G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4, from a judgment, entered in the Superior Court upon a petition for a writ of mandamus, ordering him to revoke two building permits granted by him subsequent to the amendment for the erection of commercial structures upon a parcel of land which, previous to the amendment, was located in a district zoned for residential purposes.

The appeal widens the scope of review previously to be had in mandamus proceedings and puts us in the same position as that of the trial judge in so far as that can be accomplished by a printed record, and enables us, in accordance with the principles governing appeals in equity, to reach our own conclusions as to matters of law, fact and discretion except that we may not reverse findings of fact made on oral testimony unless they are shown to be plainly wrong. *Henderson* v. *Mayor of Medford*, 321 Mass. 732. *Hill* v.

*Trustees of Glenwood Cemetery, ante,* 388. The proper decision in the present case rests not so much upon conflicting oral testimony as upon the existing layout of the town, the physical characteristics of the various sections of the land which comprises its territory, the suitability of particular sections for particular uses, the orderly development of different tracts in the public interest, and all those other objective aspects which furnish the basis for resort to a zoning by-law for the public benefit.

The judge found upon all the evidence that "the adoption of the by-law was not within the exercise of statutory and constitutional powers" and that the by-law was invalid. The findings made by the trial judge need not be narrated. In the main they were adverse to the respondent. All of them, in so far as they were pertinent, have been considered and given the weight they were properly entitled to in the light of the entire evidence.

Hingham is an ancient typical town devoted mainly to residences, with its comparatively small centers of shops and stores for the convenience of its inhabitants, with somewhat restricted railroad accommodations for those who commute to and from Boston, and with a depot and a small freight yard adjoining the depot for the reception of freight. The principal business district with its stores and shops, the depot, and the freight yard are located in the vicinity of Hingham Square. The town in 1941 adopted a zoning by-law which placed most of its territory in residential districts and the remainder in a few business districts. Other business districts were added by subsequent amendments. In the summer of 1946, one Robinson, who conducted a hay and grain business near the center of the town, desired to secure a location adjacent to a siding where goods could be unloaded from the car to the warehouse. The two short sidings in the freight yard were not available for the construction of a warehouse next to the track, the easterly one not being adaptable and the land adjacent to the westerly one being under lease to a coal company, although not in actual use by the lessee. It was problematical at least whether any siding privilege could be secured on any reason-

able terms in the business section of the town. Robinson desired to build a warehouse along the only other existing siding in the town. This siding was upon a parcel of land known as Nantasket Junction. This parcel was owned by a railroad and was situated in a residential district although used for a railroad yard, a nonconforming use, as it had been for many years previous to the adoption of any zoning by-law by the town. Robinson, having unsuccessfully attempted to secure a variance under the then existing by-law, had an article inserted in the town warrant, and advocated the passage of the amendment in question by newspaper advertisements and pamphlets. He was later joined in these efforts by one McNulty, who desired to establish a lumber yard upon the railroad premises. After the amendment was adopted by the voters and approved by the Attorney General, the respondent issued a permit to Robinson to construct a warehouse and another to McNulty to construct a building to be used in conjunction with a lumber yard, and it is these two permits which the petitioners seek to have revoked.

The locus is situated in the easterly portion of the town, about nine tenths of a mile from the nearest business section, and has an area of a little over ten acres. It is triangular in shape, covering a three branch track layout of the railroad. The base of this triangle is the main track running to Greenbush and extends from Summer Street on the west to Kilby Street on the east, a distance of about one thousand three hundred fifty feet. At Summer Street a track branches off from the main line and runs in a northeasterly direction toward the apex of this triangular piece of land, where it is joined by a branch track which runs in a northerly direction after branching off from the main track near Kilby Street. The track north of the northerly junction was removed when the Nantasket line was discontinued ten years ago. Westerly of the westerly branch is a spur track, and Robinson's warehouse is located on the southeasterly side of this track and McNulty's lumber shed is located on the northwesterly side of this track. The judge made detailed findings as to the character of the land included in the locus, and found that not only had Robinson and McNulty se--

cured the best sites but that because of the topography of the rest of the locus there was left but little other land then in condition for the erection of any buildings adjacent to a track in the entire locus. At the time the by-law was adopted the main line was used for regular service to and from Greenbush, and this line together with the two branch tracks was used daily as a turn around for a passenger train and for the same purpose several times a week for a freight train. The west branch was used principally for the "spotting" of an express car, and the spur track was used twelve to fifteen times a year for the unloading of freight cars.

The ultimate and sole question presented for decision in this case was the power of the inhabitants to enact the amendment. All other matters contained in the voluminous report of the evidence are immaterial excepting only as they relate to the authority of the inhabitants in the then existing circumstances to do what they purported to do. The power to make a division of the town into various districts and to designate the purposes for which land in those districts may be used and occupied and to exclude any other purposes rests for its justification on the police power, and that power is to be asserted only if the public health, the public safety and the public welfare, as those terms are fairly broadly construed, will be thereby promoted and protected. A zoning by-law will be sustained unless it is shown that there is no substantial relation between it and the furtherance of any of the general objects just mentioned. *Nectow* v. *Cambridge,* 277 U. S. 183, 188. *Pittsfield* v. *Oleksak,* 313 Mass. 553, 555. *Burlington* v. *Dunn,* 318 Mass. 216, 221. *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 279.

These general limitations upon the exercise of the police power are supplemented in the case of zoning regulations by further restrictions imposed by the Legislature in granting authority to cities and towns to enact such regulations. The statute, G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1, after recognizing the general principle that zoning regulations to be valid must come within the scope of the police power, which this statute does by ex-

pressly providing that such regulations may be enacted "For the purpose of promoting the health, safety, convenience, morals or welfare" of the inhabitants of a city or town, provides that regulations shall be designed to lessen congestion in streets, to secure safety from fire, panic or other dangers, to provide adequate light and air, to prevent overcrowding of land, to avoid undue concentration of population, to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other requirements, and to increase the amenities of the municipality. Due regard is to be had to the characteristics of different parts of the municipality, similar districts are to have similar regulations, and the land is to be regulated with a view to conserving the value of buildings and encouraging the most appropriate use of the land throughout a municipality. This statute prescribes the general and special limitations which must be observed in the enactment of zoning ordinances or by-laws. A local regulation which transcends the authority granted by the Legislature or is contrary to the terms upon which the power was conferred is invalid, *Leahy* v. *Inspector of Buildings of New Bedford*, 308 Mass. 128, *Whittemore* v. *Building Inspector of Falmouth*, 313 Mass. 248, *Smith* v. *Board of Appeals of Salem*, 313 Mass. 622, *Smith* v. *Board of Appeals of Fall River*, 319 Mass. 341; but a regulation within the scope of the enabling statute is good even though it may result in hardship to some landowner by depriving him of some beneficial use of his land or may adversely affect the value of some other properties in the vicinity of a newly created zone. *Wilbur* v. *Newton*, 302 Mass. 38. *Simon* v. *Needham*, 311 Mass. 560. *Pitman* v. *Medford*, 312 Mass. 618. *Marblehead* v. *Rosenthal*, 316 Mass. 124. In other words, the test of the validity of the by-law is compliance with the enabling statute.

Every presumption is to be made in favor of the by-law, and its enforcement will not be refused unless it is shown beyond reasonable doubt that it conflicts with the Constitution or the enabling statute. *Lowell Co-operative Bank* v. *Co-operative Central Bank*, 287 Mass. 338, 343. *Foster* v. *Mayor of Beverly*, 315 Mass. 567. Where the reasonableness

of a zoning by-law is fairly debatable, then the judgment of the local legislative body upon which rested the duty and responsibility for its enactment must be sustained. *Simon v. Needham,* 311 Mass. 560. *Foster* v. *Mayor of Beverly,* 315 Mass. 567.

The planning board reported that there was no real demand for the amendment and that the matter could rest until a present need for it should appear, and further suggested that no zoning change be made until after the Commonwealth decided whether Route 128 was to be relocated in the vicinity of the locus. The reasons for the decision of the board evidence the care and consideration that were given to it; but while a report ought to be filed before action at the meeting, G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1941, c. 320, so that the voters may learn of its recommendations, the report was only of an advisory nature and was not binding upon the voters. See *Duffey* v. *School Committee of Hopkinton,* 236 Mass. 5; *Sheldon* v. *School Committee of Hopedale,* 276 Mass. 230, 235. The board and the voters might well differ as to whether the time had arrived for a change in the zoning by-law. Indeed, it has been said that the necessity for legislation, like questions of expediency and the wisdom of an enactment, lie outside the judicial realm. *Nebbia* v. *New York,* 291 U. S. 502, 537, 538. *United States* v. *Darby,* 312 U. S. 100, 115. *Olsen* v. *Nebraska,* 313 U. S. 236. *Queenside Hills Realty Co. Inc.* v. *Saxl,* 328 U. S. 80, 82. If it be thought that the necessity for an amendment should appear in order to justify the special purposes for which an amendment may be had to a zoning by-law, it is enough to point out that a belief on the part of the voters, that additional use of the railroad premises would furnish better and cheaper transportation facilities for business firms that might locate there, even if some location other than the locus might possibly have been found, and that the location of a hay and grain business and a lumber yard outside the center of the town would reduce the danger from fire, could not be pronounced unreasonable or unwarranted.

The activity of Robinson in getting the amendment before

the annual meeting, in advocating its passage by newspaper advertisements and pamphlets, and in addressing the meeting, and somewhat less activity by McNulty, would not taint an enactment which was otherwise valid. It is common knowledge that nowhere is there a freer expression of individual views than at a town meeting on matters in which the town has an interest. Much may be said that may not be germane to the question before the meeting, but experience has taught that the good judgment and common sense of the voters can be safely relied upon to reach a correct decision. Publication of their opinions and debates by those holding various views only serve to assure such a decision. There is nothing here to indicate that the majority of the voters were acting solely in behalf of Robinson and McNulty rather than in the best interests of the town as they thought, and there is nothing in the slightest degree that affects the integrity of their vote. *Attorney General* v. *Williams,* 178 Mass. 330, 335. *Donovan* v. *Suffolk County Apportionment Commissioners,* 225 Mass. 55, 58. *Merrill* v. *County Commissioners of Essex,* 257 Mass. 184, 187. *Attorney General* v. *Secretary of the Commonwealth,* 306 Mass. 25, 48. *Simon* v. *Needham,* 311 Mass. 560, 566. *Pitman* v. *Medford,* 312 Mass. 618, 623–624.

The locus had been used for many years as a railroad yard, which was a use entirely different from that of any other land in the vicinity. The fixing of the boundaries of the locus as practically coterminous with the area allocated to railroad purposes and the lowering of the restrictions so that it might be used and occupied for business purposes did not constitute an arbitrary selection or classification of the premises. The locus could be and was properly treated as a unit, and the fact that parts of the entire area could not be made available for the construction of buildings without filling some areas or removing a part of a ledge upon another area did not invalidate a classification by which the entire area was placed in a business zone. Obvious differences between the railroad yard and the surrounding territory justified a difference in treatment for the purposes of zoning. In any event, a classification as the means for attaining a

permissible end is not to be declared invalid "if any state of facts reasonably can be conceived that would sustain it." *Rast* v. *Van Deman & Lewis Co.* 240 U. S. 342, 357. *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495, 509. *New York Rapid Transit Corp.* v. *New York,* 303 U. S. 573, 578.

There was much land in this section of the town available for residences, and it is hardly to be supposed that there would be much demand for home sites on the land so long as it continued to be used for a railroad yard. Hay, grain and lumber establishments are frequently located adjacent to railroad sidings, and to permit the conduct of such a business in a railroad yard was merely supplementing the railroad use by another use which was closely related to the only one to which the premises had been devoted for years and was one which might properly be considered in the development of the railroad premises if sites for such a business were there available or for any other business permitted by the zoning regulations. *Marinelli* v. *Board of Appeal of Boston,* 275 Mass. 169, 173. It cannot be said that the judgment of those having an intimate knowledge of all the essential factors involved, that the amendment was in the public interest, is entirely lacking in any rational basis. Due regard must be accorded to the collective judgment of those familiar with the locality and the circumstances prevailing in the town. See *Welch* v. *Swasey,* 214 U. S. 91, 105.

The vote of the town meeting referring to "the whole or any part of" the locus, which was immediately followed by a definite and specific description by metes and bounds of the entire area, "so that thereafter said area shall be used for business district uses as in said zoning law provided," must be reasonably construed, not "with technical strictness, but with the same liberality as all votes and proceedings of municipal bodies or officers who are not presumed to be versed in the forms of law; and every reasonable presumption is to be made in its favor." *Taunton* v. *Taylor,* 116 Mass. 254, 261. The only area mentioned in the vote is the entire area, and the purport and effect of the vote, as expressly stated upon its face, were to change the by-law

"so that thereafter said area" should be put in a business zone. A vote in favor of the amendment was a vote in favor of placing the entire area in a business district and cannot be properly construed as anything else.

Judgment is reversed, and judgment is to be entered dismissing the petition.

*So ordered.*