EVERPURE ICE MANUFACTURING COMPANY, INC., *vs.*
BOARD OF APPEALS OF LAWRENCE.

Essex.    April 4, 1949. — June 13, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

### *Zoning.*

An application, by the proprietor of an ice manufacturing plant conducted as a preëxisting nonconforming use in a district zoned for residences in a city, for a special permit to build a small oil pump house, to install four underground fuel oil tanks each of ten thousand gallons capacity, and to use the premises for the storage and wholesale distribution of fuel oil, properly was denied under a provision of the zoning ordinance authorizing issuance of a special permit for "the reasonable enlargement of a structure existing at the time of passage of this ordinance and used for trade, business or industry but located in a district restricted against such use; or for reasonably necessary additional structure for any such use upon the same lot as that upon which such existing structure and use obtain": the proposed fuel oil business was an entirely new and different business from the existing ice manufacturing business.

Facts not in dispute justified a denial of a zoning variance to permit the proprietor of an ice manufacturing plant, conducted in a residential district in a city as a preëxisting nonconforming use, to build on his premises a small oil pump house, to install four underground fuel oil tanks each of ten thousand gallons capacity, and to use the premises for the storage and wholesale distribution of fuel oil.

BILL IN EQUITY, filed in the Superior Court on November 13, 1946.

The suit was heard by *Baker*, J.

*J. P. Kane*, City Solicitor, (*J. Petralia* with him,) for the defendant.

*H. A. Cregg*, (*E. F. Cregg* with him,) for the plaintiff.

RONAN, J. This is a suit in equity under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, in the nature of an appeal to the Superior Court from a decision of the defendant board under the zoning ordinance of Lawrence, denying the application of the plaintiff for a variance in the application of the zoning ordinance and for a special permit to use certain premises for the conduct of a fuel oil business. The board appealed from a decree of the Superior Court ordering the issuance of a permit.

The evidence is reported, but there seems to be little dispute about any of the material facts. The plaintiff had for several years prior to the adoption of a zoning ordinance by the city on March 8, 1943, conducted an ice manufacturing plant on the premises in question, which were within a district zoned for residences. The business has since been conducted as a nonconforming use as permitted by the ordinance. Water for the manufacture of ice is secured from an adjoining tract of twenty-three acres, most of which is low and swampy. There is a discarded sand and gravel pit in the rear of this lot. Within a radius of one half mile from the ice plant are four manufacturing plants, a coal yard, and some residences. A part of the territory in the general vicinity of the ice plant is heavily wooded. There is not much demand for ice before May or after October in each year. The volume of business has been greatly reduced by the increasing use of electrical refrigeration in homes and in places of business. The plaintiff, in order to make a more profitable use of its premises, desires to establish a fuel oil business. Its application filed with the building inspector sought a permit to build a small oil pump house, to install four underground fuel oil tanks each of ten thousand gallons capacity, and to use the premises for the storage and wholesale distribution of fuel oil. The building inspector refused to grant the permit and the plaintiff appealed to the board of appeals.

The zoning ordinance authorizes the board to grant special permits in numerous instances, including the following: "For the reasonable enlargement of a structure existing at

the time of passage of this ordinance and used for trade, business or industry but located in a district restricted against such use; or for reasonably necessary additional structure for any such use upon the same lot as that upon which such existing structure and use obtain" (§ 35, paragraph 18). The board found that the fuel oil business was an entirely new and different business from the ice business and that the oil pump house is not a reasonably necessary additional structure to the ice manufacturing plant, and refused a special permit. It also found that the proposed fuel oil business is not permitted in the residential district in which the land is located, and that the conduct of an oil business would not be in harmony with the intent and purpose of the ordinance, and denied the application.

The ordinance, like those of many other cities, authorizes the board of appeals to grant special permits in certain designated circumstances specifically enumerated in the ordinance, and the instant case comes within the statute, G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, which authorizes the board "To hear and decide requests for special permits upon which such board is required to pass under such ordinance or by-law." *Lambert* v. *Board of Appeals of Lowell,* 295 Mass. 224, 225, 227. *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 281. *Smith* v. *Board of Appeals of Fall River,* 319 Mass. 341, 343, 344. *Carson* v. *Board of Appeals of Lexington,* 321 Mass. 649. *Tanzilli* v. *Casassa, ante,* 113.

One of the main purposes of zoning is to stabilize the use of property, and the advantages that owners of nonconforming property acquire by the enactment of a zoning ordinance are not to be subsequently augmented unless permitted by the ordinance. The plaintiff is not seeking the enlargement of any existing structure, but contends that its application is "for reasonably necessary additional structures for any such use upon the same lot as that upon which such existing structure and use obtain." A lawful nonconforming use of land existing at the time of the adoption of a zoning ordinance which may be continued is substantially

the same use to which the land was devoted when the ordinance became effective and not some other substantially different use unless the ordinance otherwise provides. We are not here concerned with the extension or expansion of the particular nonconforming use in existence at the time the ordinance became operative, as were the cases of *Amero* v. *Board of Appeal of Gloucester*, 283 Mass. 45, *Cochran* v. *Roemer*, 287 Mass. 500, and *Building Commissioner of Medford* v. *McGrath*, 312 Mass. 461, nor with cases where an increase in the nonconforming use was not permitted by the ordinance, as were the cases of *Wilbur* v. *Newton*, 302 Mass. 38, *Burlington* v. *Dunn*, 318 Mass. 216, *Inspector of Buildings of Burlington* v. *Murphy*, 320 Mass. 207, and *Billerica* v. *Quinn*, 320 Mass. 687. The question here is whether the proposed use is so intrinsically and inherently related to an existing use as to be fairly construed as included within that use.

The only existing structure on the lot is the ice plant, and the only existing use to which the locus is devoted is the making and distribution of ice. The erection of the oil pump house is in no way connected with the manufacture and distribution of ice. It is intended for an entirely different purpose. And the same is true of the installation of the oil storage tanks. The construction of the pump house and the installation of the oil tanks serve no purpose of the ice plant. The storage and sale of inflammable fluids is an entirely different enterprise than the manufacture and sale of ice. What the plaintiff proposes to do is not incidental to or an integral part of the ice business. That it is customary for ice dealers to conduct an oil business or that it is more profitable for an ice dealer to have an oil business is immaterial under this section of this ordinance, which limits a grant of a special permit to the erection of additional structures or permitting a use which is ancillary to and reasonably necessary to the further development of the specific nonconforming use which was made of the premises at the time of the adoption of the zoning ordinance and has since continued. The test is whether the proposed use is a part and

parcel of the ice manufacturing business. All the evidence introduced at the hearing in the Superior Court shows that it was not connected with the ice business. The section involved and upon which the application seems mainly to have been based does not apply. A difference between the existing use and the proposed use far less in degree than that now presented has frequently been held to constitute such a new and entirely different use as to prevent it being regarded as included within a previously existing nonconforming use. *Lexington* v. *Bean,* 272 Mass. 547. *Wilbur* v. *Newton,* 302 Mass. 38, 43. *Marblehead* v. *Rosenthal,* 316 Mass. 124. *Burlington* v. *Dunn,* 318 Mass. 216. *Inspector of Buildings of Burlington* v. *Murphy,* 320 Mass. 207. *Public Buildings Commissioner of Newton* v. *Star Market Co., ante,* 75. *De-Felice* v. *Zoning Board of Appeals of East Haven,* 130 Conn. 156. *Dube* v. *Allman,* 333 Ill. App. 538. *Botz* v. *Garrett,* 236 Mo. App. 566. *Home Fuel Oil Co.* v. *Glen Rock,* 118 N. J. L. 340. *Henry Steers, Inc.* v. *Rembaugh,* 259 App. Div. (N. Y.) 908, affirmed 284 N. Y. 621. *Coopersmith* v. *Murdock,* 262 App. Div. (N. Y.) 1032, affirmed 288 N. Y. 598. *Berberian Zoning Appeal,* 351 Pa. 475. *Shields* v. *Spokane School District No. 81,* 31 Wash. (2d) 247.

The application was upon a printed form regularly used for seeking a variance; and if we construe it as such rather than as one requesting only a special permit, then the question is whether, apart from any special permit, the plaintiff has sustained the burden of showing the existence of exceptional circumstances which would justify the relaxation of the restrictions imposed by the zoning regulations and which the statute, G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, requires must be proved before a variance can be granted.

The size, location and use of the plaintiff's land, its location in relation to various other parcels of land in the vicinity, the use and occupation of these various parcels, and the general characteristics of the area, are sufficiently disclosed in considerable detail by the evidence and numerous photographs, some of which were taken from the air. Every

physical fact material to the determination of the issue appears to be undisputed. We need not decide the functions of the Superior Court in hearing and determining a suit brought in the nature of an appeal from the decision of a zoning board of appeals because, whatever view is taken, there is as matter of law no ground upon which a variance could be granted.

There is nothing to indicate that the district has undergone any substantial change in the use and occupation of lands and buildings since the enactment of the zoning ordinance in 1943, with the possible exception of a variance granted to the Essem Packing Co. Inc., which is located about one half a mile from the plaintiff's land. A landowner in a zoning district has a right to expect that zoning ordinances shall have a fair degree of permanency. The only new factor which has appeared is the desire of the plaintiff to make a new and different use of its land, which at the time of the enactment of the ordinance was devoted to a particular nonconforming use and has since been devoted thereto. The loss of a gain which a landowner might secure from the conduct of a new business upon land properly included in a residential district is only one element to be considered, but it is not a controlling factor. It does not of itself furnish a sufficient reason for the granting of a variance. "The financial situation or pecuniary hardship of a single owner affords no adequate ground for putting forth this extraordinary power affecting other property owners as well as the public." *Prusik* v. *Board of Appeal of Boston,* 262 Mass. 451, 457. *Phillips* v. *Board of Appeals of Springfield,* 286 Mass. 469, 472. *Wilbur* v. *Newton,* 302 Mass. 38, 43. *Burlington* v. *Dunn,* 318 Mass. 216, 222.

The dominant purpose underlying a zoning regulation is the promotion of "the health, safety, convenience, morals or welfare" of the inhabitants of a municipality. G. L. (Ter. Ed.) c. 40, § 25, as appearing in St. 1933, c. 269, § 1. *Wilbur* v. *Newton,* 302 Mass. 38, 42–43. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589. The preservation of property of others in the neighborhood is a matter

of material consequence and so is the weakening of any safeguard designed and established to protect the public interest. A zoning ordinance is intended to apply uniformly to all property located in a particular district, except in the case of an existing nonconforming use, and the properties of all the owners in that district have been subjected to the same restrictions for the common benefit of all. The establishment, in a residential zone of the character described in the record, of a fuel oil business contemplating the storage of forty thousand gallons of inflammable oil, in conjunction with the sale and distribution of fuel oil, the transportation of oil to and from the premises, and the conduct of such a business during the winter months upon premises which have heretofore been idle during those months, would naturally result in adversely affecting to a substantial extent the very advantages that accrued to the community by virtue of the zoning ordinance. The physical layout does not demonstrate that such a result is unlikely, and there is no oral testimony that such a result would not ensue. It would certainly require cogent proof to justify the granting of a variance to permit the establishment of such a business in a residential zone. One to be entitled to a variance must show that it can be granted "without substantial detriment to the public good and without substantially derogating from the intent or purpose of such ordinance or by-law . . .." G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1. It is familiar law that the "power of variation is to be sparingly exercised and only in rare instances and under exceptional circumstances peculiar in their nature, and with due regard to the main purpose of a zoning ordinance to preserve the property rights of others." *Hammond* v. *Board of Appeal of Springfield,* 257 Mass. 446, 448. *Norcross* v. *Board of Appeal of Boston,* 255 Mass. 177, 185. *Coleman* v. *Board of Appeal of Boston,* 281 Mass. 112, 116. *Real Properties, Inc.* v. *Board of Appeal of Boston,* 319 Mass. 180, 184, 185.

It follows that upon this record the plaintiff was not entitled to a special permit nor to a variance in the applica-

tion of the zoning ordinance. The final decree is reversed and a decree with costs is to be entered that the decision of the zoning board of appeals of the city of Lawrence was within the jurisdiction of said board, that the decision should not be and is not annulled and that no modification of it is required; and that the clerk of the court within thirty days of the entry of the decree send an attested copy thereof to the said board of appeals and to the inspector of buildings of said city.

*So ordered.*