IDA SARENE COHEN *vs.* CITY OF LYNN & another.

Suffolk.    February 8, 1956. — March 8, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Zoning.*

An amendment of a city's zoning ordinance reclassifying from a general residence district to a restricted type apartment district a block of mostly vacant land, comprising about 330,000 square feet, and situated near the boundary of the general residence district and close to a business district and to the ocean and across the street from and opposite another substantial area similarly reclassified at the same time, was on the facts not invalid as spot zoning or otherwise beyond the authority granted by the zoning enabling statute.

PETITION, filed in the Land Court on June 8, 1953.

Samuel Rogosa, trustee, was allowed to intervene.    The case was heard by *Cotton, J.*

*Morris Michelson,* for the respondent and another.

*James W. Santry, Jr., (Nathan Tobin* with him,) for the petitioner.

WHITTEMORE, J.    This petition, filed June 8, 1953, is brought in the Land Court under G. L. (Ter. Ed.) c. 240, § 14A, and c. 185, § 1 (j½), both inserted by St. 1934, c. 263, to determine the validity of a 1946 amendment to the zoning ordinance of the city of Lynn which reclassified a block of land on Lynn Shore Drive, in which the petitioner's residence stands, from a general residence district

to a restricted type apartment district. The intervener is the owner of much of the land in the block and is the holder of a permit to erect an apartment house on this land. According to the findings the intervener stated in open court that he desires to have his rights established.

The findings include, "I find as a fact that the placing of petitioner's and intervener's land in a restricted apartment zone and use is not indispensable to and does not promote the health, safety, convenience and general welfare of the city of Lynn." "The effect . . . is to single out one block within an area of essentially the same characteristics and in the same use district and to impose upon this block less onerous restrictions than those imposed upon the remaining portion of what is really the same zoning district (a condition sometimes referred to as 'spot zoning')."

Subsidiary findings include the following (summarized): The area is more like a single residence than a general residence area; most of the two family houses in the area do not appear such from the street; the location is ideal for those wishing the benefits of an excellent beach, nearness to the ocean, and living not too far from a business area; there has been no substantial change in locus and surrounding area over the years and except for the building of the Nahant Garden Apartments on land across the street from the locus and rezoned at the same time and in the same way, the change has been decidedly toward single family homes; the evidence that the new zone would lessen the fire hazard is not substantial and, on the contrary, the increase in the number of families with apartments increases street occupancy by automobiles and the new zoning permits third class construction of the house if the house is of three stories or less; the planning consultant, who favored the change and favored more restricted apartment areas than Lynn now has, had a city wide view as to its justification, and his impelling reason seemed "to be demand and keeping the city from shrinking in population rather than the existing status of the locus; he depended on a trend rather than any existing substantial or actual change in the

zone"; "I find no substantial reason for the restricted apartment zoning in locus; it cannot be said to be reasonable or necessary to uphold the integrity of the zoning system as existing in the city"; rather than advance public interest it unquestionably increases the population materially, would add to street congestion, induce taller structures, and not preserve the character of the property.

"On an appeal from a decision of the Land Court, the findings of fact appearing in the decision . . . must ordinarily be accepted as final." *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 449.

We construe the judge's ultimate conclusions, although expressed as "findings," to include the rulings that the amendment of 1946 exceeded the power of the city council because as matter of law it was spot zoning and could not reasonably have been found by the council to promote the health, safety, convenience, and general welfare of the city, and hence was outside the basic zoning purpose as stated in the statute. The judge, in granting and denying requests, made rulings consistent with the foregoing. The intervener and the city of Lynn took exception to the rulings and to the "decision and determination of the court," namely, that the subject 1946 amendment ordinance "is invalid with respect to said petitioner's and intervener's land and of no force or effect in reference thereto." We hold that the facts found do not justify the judge's rulings and determination.

The block in question is bounded southerly by Lynn Shore Drive, easterly by Wave Street, northerly by Ocean Street, and westerly by Nahant Street, and contains in round figures 330,000 square feet of land. At the same meeting at which this block was rezoned another parcel directly opposite it across Nahant Street and containing in round figures 177,000 square feet (now the site of the Nahant Garden Apartments) was also rezoned from a general residence district to a restricted type apartment house district. The total area thus rezoned contained something over 507,000 square feet.

The rezoned area is near the westerly boundary of the

general residence district as it existed prior to the subject
1946 amendments. The extension of Lynn Shore Drive to
the west beyond Nahant Street for three short blocks is
called Beach Road. Except for the corner lot the entire
frontage on Beach Road is in an apartment house district.
Directly to the west of the Nahant Garden Apartments site
there was a general residence district for a distance approxi-
mating the frontage of the subject locus on Ocean Street,
but the area farther to the west beyond this general resi-
dence area was zoned for apartments. The southeast corner
of an apartment house district lying generally to the north-
west of the subject area was directly across Sagamore Street
from the northwest corner of the Nahant Garden Apart-
ments site. There was some nonconforming use of property
in the locus and across Wave Street including a four family
building, a three story single apartment structure, and an
apartment house, or hotel, The Breakers, a sizable seven
story brick building. "It was agreed that a number of the
resident owners took boarders or leased rooms, as permitted,
but it could not be observed from viewing the houses."
The city council in 1948 and again in 1950 rezoned other
areas for apartment house districts.

The zoning ordinance permitted, in general residence dis-
tricts, one family detached houses and semidetached and
two family dwellings, the taking of boarders and leasing of
rooms, boarding and lodging houses, hotels, a telephone
exchange, municipal and community-function buildings of
listed kinds, private clubs, farms, greenhouses, nurseries and
truck gardens, real estate signs, and accessory uses. The
ordinance permitted, in restricted type apartment house
districts, the same uses except that boarding and lodging
houses, telephone exchanges, private clubs, farms, green-
houses, nurseries, and truck gardens were not permitted,
and restricted type apartment houses were permitted. The
permitted restricted type apartment houses may not exceed
five stories in height, must be designed to be used for dwell-
ing purposes by families occupying separate apartments or
suites, and if more than three stories in height they must

have elevators and be of acceptable fireproof construction. Each room is required to have direct light from windows in outside walls except bathrooms and reception halls. In apartment house districts under the ordinance all the uses permitted in general residence districts are permitted and also apartment houses and row houses. An apartment house other than the restricted type is defined as a dwelling for more than two families under one roof. Row houses are defined as dwellings for one or two families each in a connected row of three or more houses, each two houses separated by a fireproof division with no opening.

The zoning ordinance provides that "Restricted Type Apartment House or such portions of a building as may be used as such shall be provided with lot area therefor of not less than ten thousand square feet and shall cover not more than fifty per cent of the lot area and shall, with all dwellings in Restricted Type Apartment House Districts, be in all other respects subject to the provisions of Section 11 of Zone Ordinance." Section 11 of the ordinance imposes some additional area regulations.

It is manifest that reasons could be found and in good faith deemed sufficient for rezoning the subject area, comprised of the locus and the Nahant Garden Apartments site, as a restricted type apartment district.

It could be believed, as was testified by an expert witness in the case, that it is appropriate to have the greater population density which apartment zoning provides in such an area as this which is relatively near the business district and very close to the ocean, where there is therefore a great demand for dwellings; and that when there is a correspondingly high land value it is better to put the dwelling units close together and provide larger common open areas rather than relatively small open areas beside each dwelling. The findings are that in 1940 the population of the city was 101,000; in 1950, 99,521; "and estimated for 1977 it would be 90,000 under present zoning." It could have been felt, as suggested by the expert, that additional provision for apartments was desirable as a factor in maintaining

a desired level of population to which existing municipal services are geared. The council could have given weight to a trend in demand, to which the expert testified, away from two family buildings and toward apartments.

It was appropriate in considering a zoning change to view the city as a whole (see *Shannon* v. *Building Inspector of Woburn*, 328 Mass. 633, 637) and to plan for the future. *Simon* v. *Needham*, 311 Mass. 560, 563. *Wilbur* v. *Newton*, 302 Mass. 38, 42. It is not necessary to find a substantial change in the locus to support a change in its zoning classification. See *Lamarre* v. *Commissioner of Public Works of Fall River*, 324 Mass. 542, 547; *Raymond* v. *Commissioner of Public Works of Lowell*, ante, 410, 413.

It cannot be ruled as matter of law that the city of Lynn could not provide for a new type of dwelling, and that it could not provide for more apartment houses, or that the subject area, situated as it was near the dividing line between the unrestricted apartment area and the general residence area was an inappropriate place for the new type buildings. Nor could it be held as matter of law that the particular restrictions of the new type zone were not at least as reasonably suited to the subject area as the superseded restrictions. Conceivably the city council could have believed they were on the whole more suitable.

The intervener's land in 1946 was a large tract, mostly vacant. The fact that so much land in the locus was vacant had some relevance to its suitability for apartment houses, if other relevant factors permitted such use.

The judge marshalled persuasive reasons for disagreeing with the city council. They fall short, however, of sustaining the view that the city council acted beyond its power. They constitute some but not all of the relevant factors which the city council might evaluate. This was not spot zoning. The entire rezoned area comprised between eleven and twelve acres. It was appropriate in size and in location. The new district had to stop somewhere and it was a matter of legislative discretion how much of the adjacent general residence district to include in the new district.

Mere delay in attacking the validity of the amendment of 1946 would not bar the petitioner. See *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 444, 445, and cases cited. But in the intervening time the character of the westerly part, and a substantial part, of the new restricted type apartment house district had become fixed by the building of the Nahant Garden Apartments on the approximately 177,000 square feet which lies on the westerly side of Nahant Street across from the locus. This building, containing apartments for sixty-six families, was completed January 1, 1953. This intervening development is relevant to the case, but since we hold, apart from it, that the city council was acting within its powers, it is unnecessary to consider in what circumstances, if any, such a factor in itself would be sufficient to bar relief.

The controlling principles have been frequently and clearly stated. The fact that the question is debatable does not empower the court to substitute its judgment. Every presumption is to be made in favor of the by-law or ordinance and it will be sustained unless it is shown beyond a reasonable doubt that it conflicts with the statute or the Constitution. *Burnham* v. *Board of Appeals of Gloucester, ante,* 114. *Lamarre* v. *Commissioner of Public Works of Fall River,* 324 Mass. 542, 545. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589, 594. *Raymond* v. *Commissioner of Public Works of Lowell, ante,* 410.

The exceptions are sustained. The decision is reversed and a new decision is to be entered in accordance with the opinion.

*So ordered.*