MARY E. McHUGH vs. BOARD OF ZONING ADJUSTMENT OF BOSTON & another. .

Suffolk. October 10, 1957. — February 5, 1958.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

Board of Zoning Adjustment. Boston. Zoning. Equity Pleading and Practice, Zoning appeal.

St. 1924, c. 488, § 20, as appearing in St. 1941, c. 373, § 19, providing that no change of boundaries of districts on the zoning map of Boston "shall be made except by the decision of not less than four fifths of the members" of the board of zoning adjustment, twelve in number, "rendered after a public hearing thereon," and that a "majority of the board shall constitute a quorum for all public hearings and for all acts of the board, except that decisions changing the boundaries of districts . . . shall be deemed to comply with this section only if the written record of such decision is signed . . . by not less than four fifths . . . of the members of the board," does not require that all members participating in the decision shall have attended the public hearing, and a decision changing zoning boundaries complies with the statute if a majority of the members of the board attend the hearing and four fifths of the members sign the written record of the decision. [684–685]
On an appeal to the Superior Court in equity from a decision of the board of zoning adjustment of Boston under St. 1924, c. 488, § 20, as appearing in St. 1941, c. 373, § 19, there is a trial de novo and it is the duty of the judge to determine the facts and rule upon the legal validity of the board's decision in the light of those facts. [687]
Action by the board of zoning adjustment of Boston under St. 1924, c. 488, § 20, as amended, changing the boundary of a district on the zoning map must be for a stated reason or reasons falling within one or more of the seven general classifications of reasons therein enumerated. [688]
"Spot zoning" was shown on the face of a decision by the board of zoning adjustment of Boston under St. 1924, c. 488, § 20, as amended, to extend a business zone along a street so as to include a parcel of about 10,000 square feet in the rear of that zone, theretofore in a residential district, where, although the board stated that its reasons for its decision were "to meet altered needs of a locality" and "to promote the health, safety, convenience and welfare of the inhabitants of the city," the board found that the parcel was similar to the surrounding

McHugh v. Board of Zoning Adjustment of Boston.

land in the area and its material specifications in support of its reasons applied generally to the whole area. [688–689]

Uniformity of classification is necessary to the validity of zoning under the Boston zoning statute, St. 1924, c. 488, as amended, even though no express provision for such uniformity is contained therein. [689]

Upon an appeal to the Superior Court in equity under St. 1924, c. 488, § 20, as appearing in St. 1941, c. 373, § 19, from a decision of the board of zoning adjustment of Boston changing the boundaries of a zoning district, a decree sustaining the decision of the board was erroneous and must be reversed where the decision was based on stated facts which, if true, showed on their face that the decision was invalid as effecting "spot zoning." [689–690]

BILL IN EQUITY, filed in the Superior Court on August 30, 1956.

The suit was heard by *Brogna*, J.

*Joseph P. Graham*, for the plaintiff.

*William D. Quigley*, Assistant Corporation Counsel, (*Edmund J. Burke* with him,) for the defendants.

WHITTEMORE, J. This is an appeal from a final decree in the Superior Court adjudging that a decision of the board of zoning adjustment of the city of Boston acting under St. 1924, c. 488, § 20, as amended, which extended the boundaries of a zoning district, was not in excess of its authority and that no modification of the decision was required. The evidence in the Superior Court is reported. There were no findings of fact.

The application to the board was by the defendant Lucy A. Centola, owner of premises at the southwesterly, acute angle, corner of Western Avenue and Waverly Street in the Brighton section of Boston. Both sides of Western Avenue are zoned for general business (B–65, 65 foot height) to a depth of 100 feet. The application asked and the board granted an extension of the boundary of the business zone so as to include the applicant's land on Waverly Street directly in the rear of that part of the applicant's corner property which fronts on Western Avenue and is zoned for business. This area is included in the general residence district (R 40, 40 foot height) as it stood prior to the board's decision. The effect of the change of boundary is to extend the business zone southwesterly on the northwesterly side of

Waverly Street into an area which measures about 170 feet along the center line of Waverly Street and about 150 feet along the Waverly Street lot line, and contains, as estimated by the applicant's husband, about 10,000 square feet. The practical effect of the change will be to allow the extension into the rezoned area of the terminal, or park, for the trucks used in the business conducted on or from the applicant's Western Avenue premises.

1. The decision of the board was not invalid for want of participation of the requisite number of its members.

The statute (St. 1924, c. 488, § 20, as amended) provides that "No such change [of boundaries] shall be made except by the decision of not less than four fifths of the members of the board [twelve in number], excepting only any member or members not qualified to act, rendered after a public hearing thereon . . . . A majority of the board shall constitute a quorum for all public hearings and for all acts of the board, except that decisions changing the boundaries of districts on the zoning map or confirming a decision of the board of appeal shall be deemed to comply with this section only if the written record of such decision is signed, in case of any change of boundaries as aforesaid, by not less than four fifths, or, in case of any confirmation of a decision of the board of appeal, by not less than two thirds, of the members of the board qualified to act. If less than a majority of the board is present at any public hearing or at any executive session, the members actually present may adjourn the same by proclamation to such time and place as they deem advisable, and further notice thereof shall not be necessary. The board may adopt rules, not inconsistent with the provisions of this act, governing notice and procedure."

The application was heard at a meeting attended by nine members. The written record of the decision was signed by ten members including two who did not attend the hearing.

Our decisions establish that an unqualified requirement that all, or a stated fraction, of the membership make the decision after a public hearing means that all who are to

join in the decision must have attended the hearing. *Sesnovich* v. *Board of Appeals of Boston,* 313 Mass. 393, 396–398. *Perkins* v. *School Committee of Quincy,* 315 Mass. 47, 51–53. These decisions are broadly based. In the *Sesnovich* case we said in respect of St. 1924, c. 488, § 19, that a "quorum for . . . [such unanimous] decision . . . necessarily consists of the 'entire membership of the board' . . . . A 'public hearing' at which less than the 'entire membership . . .' . . . was in attendance would not be a 'public hearing' such as is required by the statute . . . . The board, without a quorum present, would not be legally competent to hold the 'public hearing' . . . . The requirement . . . relates to the jurisdiction of the board." But the express provision before us is qualified by the subsequent language in respect of quorum and signing, which was added by St. 1925, c. 219, § 12. We think that, read together, the two sentences provide that, under this section of the statute, the quorum for the public hearing does not consist of all who are to participate in the decision to make the required number for valid action but does consist of only a majority of the board. The exception stated is an exception in respect of an "act . . . of the board," that is, the signing of the decision. Thus, what is meant in the earlier sentence by the requirement of a "decision of not less than four fifths of the members . . . after a public hearing" is made explicit; it is that if a majority of the board has attended the hearing a decision changing boundaries will "comply with this section" (that is, comply with the provision for a four-fifths decision after public hearing), if, but only if, the decision is signed by the requisite four fifths of the members. Sufficient familiarity with what has occurred to enable members who sign but were not present at the hearing to exercise informed judgment is implied. See and compare *Perkins* v. *School Committee of Quincy,* 315 Mass. 47, 52–53, where we said in respect of a different statute (page 53), "We do not imply that under a statute or valid rule, different from the statute here involved, a reading of a stenographic report of evidence and arguments may not furnish a legally sufficient basis for

a decision." The difference between § 19 and § 20 in the respect under discussion tends to confirm this construction.

2. The decision of the board was, on its face, "spot zoning" and the decree of the Superior Court sustaining it was erroneous.

Criteria for valid action by the board are stated in the statute (St. 1924, c. 488, § 20, as amended) as follows: "Either upon petition or otherwise, the board may, subject to the following conditions, change the boundaries of districts by changing the zoning map, on file at the state secretary's office, [1] to meet altered needs of a locality, [2] to avoid undue concentration of population, [3] to provide adequate light and air, [4] to lessen congestion in streets, [5] to secure safety from fire, panic and other dangers, [6] to facilitate the adequate provision of transportation, water, sewerage and other public requirements and [7] to promote the health, safety, convenience and welfare of the inhabitants of the city of Boston. Such changes shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land. . . . The board shall cause to be made a detailed record of all its proceedings, which record shall set forth the reasons for its decisions . . . ."

The decision of the board was in evidence. It recites: "The board being of the opinion after hearing all the evidence in the case: (a) That the present general business boundary line of 100 feet on Western Avenue is not of sufficient depth to accommodate many general business uses which include manufacturing and warehousing establishments, as well as truck terminals (b) That the Western Avenue area is an expanding distributing center and as such requires accessory uses for the parking of vehicular equipment and motor truck terminals (c) That it is not the expansion of the truck terminal itself that creates a difficulty, but rather the street routing of trailer trucks which may be corrected by petitioning the traffic commission to

regulate this type of traffic on neighborhood streets and thus restrict truck access to Western Avenue and Waverly Street (d) That the long term highest and best use of land in this area appears to be for general business and further expansion is indicated since the small residential area is entirely surrounded by business and industrial zones (e) That due allowance should be made for modern trends in development and the continuance of a thriving distributing center so as to broaden the tax base and thus be for the best advantage of the entire municipality [the board] thus holds that the highest and best use of the land make necessary this change in use classification (1) To meet altered needs of a locality (7) To promote the health, safety, convenience and welfare of the inhabitants of the city of Boston."

The appeal to the Superior Court is governed by the provisions of St. 1924, c. 488, § 20, as appearing in St. 1941, c. 373, § 19.[1] These are similar to G. L. (Ter. Ed.) c. 40A, § 21, inserted by St. 1954, c. 368, § 2. It is now well established that under such a statute it is the duty of the judge to hear the matter de novo, expressly determine the facts, and rule upon the legal validity of the decision appealed from in the light of the facts found by him. *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103, 106. *Devine* v. *Zoning Board of Appeals of Lynn,* 332 Mass. 319, 321. *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 449.

While the decision of the board "has no evidentiary weight" in respect of the facts relevant to test it (*Devine* v. *Zoning Board of Appeals of Lynn,* 332 Mass. 319, 321), it is necessarily examined to determine what it is that the board

---

[1] "If a change be favorably decided upon or if a decision of the board of appeal shall be confirmed, any person aggrieved or any municipal officer or board may appeal to the superior court sitting in equity for the county of Suffolk; provided, that such appeal is filed in said court within fifteen days after such decision is recorded. It shall hear all pertinent evidence and determine the facts and, upon the facts as so determined, annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exception as in other equity cases."

purported to do. *Marotta* v. *Board of Appeals of Revere,*
*ante,* 199, 201.

The scope of the facts relevant to determine whether the
decision exceeded the authority of the board, in the case of
an appeal under St. 1924, c. 488, § 20, as amended, is affected
by the requirement of the statute that the board set forth
reasons, and by the board's compliance therewith. The
reasons are an essential part of the decision. "[T]here
must be an explicit compliance with the statute by a state-
ment of the actual reasons grouped under one or more of
the seven general classifications of reasons found in the first
sentence of the second paragraph of § 20. One or more of
those reasons must move the board to action and must be so
stated in the record. Those are the only reasons for which a
change is permitted. Other reasons, whatever they are, do
not authorize a decision by the board to make a change."
*Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass.
160, 174.

The decision of the board, on its face, shows that the board
was "move[d] . . . to action" in respect of the locus to
accomplish two of the seven permitted purposes of a bound-
ary change, by its findings of facts which show a need for
change of the boundaries of a larger area.[1] The board by
its statement of its "actual reasons" has shown that it is
"singling out . . . one lot for different treatment from that
accorded to similar surrounding land indistinguishable
from it in character" — *Whittemore* v. *Building Inspector of
Falmouth,* 313 Mass. 248, 249. Four of the five specifica-
tions of the decision are of general application to the area.
The fifth, lettered (c), is an answer to the objection that the
expansion of the truck terminal will add to traffic conges-
tion; it is not a statement of a reason why the locus, within
the principles of zoning, should be singled out for different
treatment from that accorded surrounding land which the
board expressly finds is similar. This would be invalid as

---

[1] The statute gives the board power to act apart from a petition for particu-
lar action ("Either upon petition or otherwise . . ." St. 1924, c. 488, § 20,
as amended).

"spot zoning" under a statute such as the enabling act which underlies most of the zoning ordinances and by-laws of the Commonwealth and which expressly prescribes uniformity.[1] See *Leahy* v. *Inspector of Buildings of New Bedford,* 308 Mass. 128; *Whittemore* v. *Building Inspector of Falmouth,* 313 Mass. 248; *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622; *Caputo* v. *Board of Appeals of Somerville,* 331 Mass. 547. Compare *Marblehead* v. *Rosenthal,* 316 Mass. 124; *Lamarre* v. *Commissioner of Public Works of Fall River,* 324 Mass. 542; *Cohen* v. *Lynn,* 333 Mass. 699; *Raymond* v. *Commissioner of Public Works of Lowell,* 333 Mass. 410. The omission in St. 1924, c. 488, as amended, of a similar express provision does not affect the applicability of the principle. Uniformity of classification is necessary to avoid arbitrary and discriminatory action apart from statutory requirements. See *Opinion of the Justices,* 234 Mass. 597, 605–606; *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103, 109.

A necessary predicate to a ruling in the Superior Court that the carrying out of the decision of the board to rezone the locus would not violate the requirement of uniformity would be a finding in that court that the facts about the neighborhood are substantially different from those expressly found by the board or at least from those facts which are implicit in its findings. The board's findings do not say that the locus is not in any material respects differentiated from the "Western Avenue area" which it finds to have changed in character, but they necessarily imply that all the facts material to the change in the boundaries of the locus have been stated. Any substantial differentiation of the locus itself would be of critical significance. It is sufficient for our decision (which we base on this point) that no such determination has been made in the Superior Court,

---

[1] G. L. (Ter. Ed.) c. 40A, § 2. "All such regulations and restrictions shall be uniform for each class or kind of buildings, structures or land, and for each class or kind of use, throughout the district . . . and the zoning regulations . . . shall be the same for zones, districts or streets having substantially the same character."

nor could be made on the evidence, which goes substantially no farther in support of the decision than to confirm to some extent the findings of the board of a change in the "Western Avenue area."

We do not suggest, however, that if there had been such a determination in the Superior Court it would have supported a decree that the decision of the board was within its authority. Any decision to rezone involves the application to the relevant facts of judgment and discretion. See *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 165–167; *Fandel* v. *Board of Zoning Adjustment of Boston,* 280 Mass. 195, 197. This function must be performed by the body to which the statute has given it, in this case the board. The court cannot substitute its judgment. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557–558. There would appear to be a conflict with these principles in an adjudication by the court of the validity of the rezoning if that adjudication were based on newly found facts materially at variance with those found by the board. Conceivably, with different result, newly found facts might be such as merely to supplement those found by the board and of such a nature that it could be concluded that the board had exercised its judgment and discretion in the light of them as well as of the facts found by it. A decision on the issues discussed in this paragraph is not now required.

An understanding of the true nature of that which is presented for the appraisal of the Superior Court (a decision not merely to rezone, but to rezone because of findings which if true make the action invalid) furnishes the answer to the board's contention that the appellant must prove a case against the decision by other evidence. There can be no presumption of the validity of legislative action which is expressly predicated only on facts which if true establish the invalidity of what is done. Compare *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589, 594; *Raymond* v. *Commissioner of Public Works of Lowell,* 333 Mass. 410, 414; *Cohen* v. *Lynn,* 333 Mass. 699, 705. The board is not

helped by any rule as to burden of proof. A decision stating facts which appear adequate to support the action taken would stand in materially different aspect. It is a different case also if the statute does not call for a statement of reasons as a part of the decision but the evidence shows that some of those voting may have been moved by factors which would be insufficient or invalid reasons for a zoning enactment. Compare *Simon* v. *Needham*, 311 Mass. 560; *Caires* v. *Building Commissioner of Hingham*, 323 Mass. 589, 596; *Raymond* v. *Commissioner of Public Works of Lowell*, 333 Mass. 410, 412.

3. The decree in the Superior Court is reversed. A decree is to be entered that the decision of the board of zoning adjustment was in excess of its authority and is annulled and that the clerk of court within thirty days after the entry of the decree shall send an attested copy thereof to the board.

*So ordered.*