BENJAMIN SHAPIRO & others *vs.* CITY OF CAMBRIDGE & another.

Middlesex.    February 2, 1960. — April 6, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Zoning.   Cambridge.*

Evidence respecting a city area in which, by the city's original zoning ordinance, strips of land abutting both sides of an east-west main line railroad for about a mile were placed in a heavy industry zoning district, except for a playground in the northerly strip, and land to the north of the northerly strip was placed mostly in residence districts did not support a conclusion that a parcel about in the middle of the northerly strip adjacent to the playground was sufficiently different from the other land in the strips to justify an amendment of the ordinance, fifteen years after it was originally adopted, rezoning such parcel as a light industry district; the amendment was invalid as spot zoning.

PETITION, filed in the Land Court on May 13, 1958.

The case was heard by *Fenton, J.*

*Philip M. Cronin,* for the petitioners.

*J. Henry Smith,* Assistant City Solicitor, for the city of Cambridge.

WHITTEMORE, J.   An amendment to the Cambridge zoning ordinance adopted April 21, 1958, was held valid by the decision of the judge in the Land Court on June 11, 1959, on

a petition under G. L. c. 240, § 14A, and c. 185, § 1 (j½), both inserted by St. 1934, c. 263. The petitioners, owners of land on the southerly side of Pemberton Street, which by the amendment, with other adjacent land, was reclassified from an Industry B district, heavy industry, to an Industry A district, light industry, claimed exceptions to the findings and rulings of the decision and to the failure to rule, inter alia, in substance, that the amendment was invalid as spot zoning and violative of the requirements of uniform classification of like areas. The bill of exceptions includes the decision and "all the evidence" with exhibits.

The zoning ordinance was adopted in December, 1943, and the judge found that the districts are shown on the zoning map of December, 1943. The rezoned area is adjacent on the north to the tracks of the Fitchburg division of the Boston and Maine Railroad. These tracks enter Cambridge from the east at Porter Square and run westerly for about two miles to the Belmont line. With four exceptions all the land on both sides of the tracks was in 1943 zoned Industry B. At Porter Square, on either side of Massachusetts Avenue, for a total length of about 1,200 feet along the tracks, the zone was Business B. Where the tracks cross Alewife Brook Parkway a strip which appears to scale 100 feet on the west side of the parkway was Residence A–2. At the westerly city line, the tracks run through the north corner of a Residence B district for about 450 feet. Approximately 2,200 feet westerly of Massachusetts Avenue, a strip on the north of the tracks about 550 feet long and 130 feet wide, which the evidence showed is a playground, was zoned Residence C–1. This playground parcel is bounded on the north by Pemberton Street and on the west by the parcel rezoned in April, 1958. The evidence showed that this playground area was an extension across Pemberton Street of the playground use of Rindge field and is occupied by a "tennis court and basketball court, hard court surface." The rezoned parcel is just about midway in a segment of the extensive Industry B district. This segment, much narrower in its eastward aspect, extends without a break, except for

the playground, for about a mile along both sides of the tracks from a point near Massachusetts Avenue to Alewife Brook Parkway. The rezoned parcel is a rectangle about 1,000 feet in length and 130 feet deep between the center lines of Sherman Street and of Yerxa Road extended. Most of the land north of this segment of the Industry B zone and south of a narrow Business A zone on Massachusetts Avenue is in a Residence C–1 zone; some of it is in a small Residence B zone and some is in a small Business A zone on Rindge Avenue. The locus and some aspects of nearby areas are shown on the accompanying sketch.[1] There are in the locus structures used by an auto body business and a carpet cleaning business, nine houses, and the site of a former plant of Metropolitan Coal Company.

Industry A districts in 1943 were few and relatively small in size, and none was adjacent to the railroad tracks. The zoning map shows an A zone at Alewife Brook Parkway and Concord Avenue, and another at the northern side of the Industry B district where the industrial zone abutted a Residence C–1 zone. The permitted uses in an Industry A zone are: Any use or accessory use which is permitted in the Business B district; dyeing and cleaning establishment; food products manufacture; laundry; milk distributing station; machine shop; any other light manufacturing use similar in character to the foregoing uses and not otherwise prohibited. The permitted uses in an Industry B district include the uses permitted in an Industry A district, other specified uses including "Building materials storage yard," and manufacturing uses generally but with the exclusion of certain named uses and those which are "obnoxious or offensive by reason of the emission of smoke, dust, gas, noise or odor."

The petitioners by deed of December 12, 1957, took title to 42,487 square feet of land about in the middle of the subject area. On this parcel Metropolitan Coal Company had for many years maintained a depot with about eighteen

---

[1] Adapted from a sketch in evidence found to be a sketch of the uses of the locus and surrounding land.

cement storage pockets, some wooden sheds and an office building. The parcel has a spur track for seven cars. Prior to December 12, 1957, there was a fire in the pockets. After purchasing the land the petitioners demolished the pockets. The petitioners are real estate developers and officers and stockholders of Hub Building Wrecking Company. The judge found that "[t]here had been some thought that the petitioners might move the Hub Building Wrecking Company yard and establish a so called 'junk yard' at the premises." The amendment followed a petition on November 25, 1957, asking for the change which the amendment later enacted. The transcript of the planning board hearing on this petition, referred to it by the city council, shows that several who spoke in favor of the change wished to prevent the coming to the area of a building wrecking business and a junk yard. The conclusion was warranted that a purpose of those asking the change had been to prevent this. The petitioners denied an intent to establish such businesses on the site.

The evidence showed that since 1943 a substantial number of houses had been built in the residence zone north of Pemberton Street with an "upgrading and betterment of this residential section" on a number of streets. The Jefferson Park Housing Project had been built to the west of the rezoned parcel. The large M. E. Fitzgerald School on Yerxa Road was new. Across Rindge Avenue "Outer Russell Field" had been added to existing playground facilities. St. John's Church and Grammar School, on Massachusetts Avenue, had been reconstructed. For reasons to be stated we need not decide if these changes were sufficient to justify a change in the classification of adjacent land in the Industry B zone.

The evidence does not support the conclusion that the rezoned area was sufficiently differentiated from other land in the Industry B zone to support a change in the established classification of only the rezoned area. It was a basic determination of the 1943 zoning ordinance that the Industry B classification be applied to the areas adjacent to the rail-

road tracks, with the limited exceptions noted above. The recommendation of the planning board[1] showed its view that industrial use remained appropriate for trackside land. The planning director of the city, called by it, although he testified that "a change . . . from Industry B to Industry A will encourage the improvement of the neighborhood generally, which is now underway," testified also that "the parcel from Sherman Street to Yerxa Road, on the northeasterly side of the railroad tracks . . . is for all purposes comparable to all the property marked Industry B in the North Cambridge area." The zoning map shows that in the aspect of its effect on the adjacent Residence C-1 zone it is not significantly differentiated from much of other parts of the Industry B district also adjacent to that residence zone. A real estate operator and appraiser acquainted with the area testified that the rezoned parcel did not "lend itself to heavy industry. It is not desirable on the part of people who would like to own industrial land . . . because the area to the north . . . has been decidedly improved . . . from a residential standpoint." This view would be of equal application to all the Industry B zone near Pemberton Street and also all that which is located west of the cemetery and west and north of Russell Field and which surrounds and is adjacent to the C-1 Residence area between Pemberton Street and Massachusetts Avenue on its west and northerly sides.

We think the razing of the buildings on one lot is not a significant change in the character of the area for purposes

[1] The planning board reported as follows: "At the hearing 196 persons were recorded in favor of the petition including some of the original signers as well as speakers at the hearing. Two persons including Benjamin Shapiro, one of the owners of the property in question, appeared in opposition. . . .

"The planning board feels that since the establishment of the original zoning of Industry B that conditions in the general neighborhood have altered, justifying upgrading of the property in question. In the past several years a substantial and new public housing development has been constructed at Jefferson Park and Jefferson Park Extension. A new city playground, Outer Russell Field, has been constructed. More recently the M. E. Fitzgerald School has been erected on Rindge Field. These improvements reinforce the general residential character of the neighborhood. In view of the fact that this property is located on a main railroad line and is served by a spur track, an industrial use is nevertheless suitable."

of zoning classification. Such a change may appropriately direct attention to the possible desirability of a change in zones. But where, as here, almost all the nearby industrially zoned land is in use, a change of zone will, except for the single vacant parcel, have an effect only gradually, and the appropriate area for rezoning is all that which for the same reason is differentiated from the rest of the zone having in mind not only the conditions within the zone, but also important changes in relationship to adjacent zones of other classification.

It is well established that there is wide latitude in the local legislative body to determine the particular location of zoning district boundaries. *Marblehead* v. *Rosenthal*, 316 Mass. 124. *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 593–595. *Lamarre* v. *Commissioner of Pub. Works of Fall River*, 324 Mass. 542, 544–546. *Raymond* v. *Commissioner of Pub. Works of Lowell*, 333 Mass. 410, 413–414. *Tracy* v. *Board of Appeals of Marblehead*, 339 Mass. 205, 208, and cases cited. Nevertheless the criteria applicable to a change of established lines may impose limitations not present when zoning is first adopted. *Leahy* v. *Inspector of Bldgs. of New Bedford*, 308 Mass. 128, 132–133. See *Tracy* case, *supra*, p. 208. The immediate adjacency to the railroad tracks of the subject parcel and nearby land which remained in Industry B zone is a dominant circumstance.

We see "no substantial relation between . . . [this change] and the furtherance of any of the general objects" of zoning. *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 593. G. L. c. 40A, §§ 2, 3. The view is persuasive which was expressed in the testimony that the change from Industry B to Industry A would make little difference to the nearby residential area, as all the uses of Industry B would be permitted on nearby land most of which was unchanged.

The answer of the city asserts that "the prevention of the use of the land as a 'junk yard' was a minor factor in its . . . decision." This admission did not require the conclusion that the amendment was invalid. See *Simon* v.

*Needham,* 311 Mass. 560, 566; *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 596; *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 412. But for the reasons stated the ruling was required that the amendment of April 21, 1958, was invalid as spot zoning and violative of the requirement of uniform classification. *Leahy* v. *Inspector of Bldgs. of New Bedford,* 308 Mass. 128. *Whittemore* v. *Building Inspector of Falmouth,* 313 Mass. 248. *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622. *Caputo* v. *Board of Appeals of Somerville,* 331 Mass. 547. *McHugh* v. *Board of Zoning Adjustment of Boston,* 336 Mass. 682, 688–689. *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 253–255. Compare *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589; *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542; *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103, 109; *Morgan* v. *Banas,* 331 Mass. 694, 695–696; *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410; *Cohen* v. *Lynn,* 333 Mass. 699.

There is no issue of the correctness of findings. The judge found the changes in the use of land in the neighborhood described above. There are no express findings in respect of the Industry B district other than those stating the changes of ownership of and structures on the petitioners' land. We have assumed all the findings which are implicit in the decision and which the evidence would support.

The petitioners' exceptions are sustained. The decision is reversed and a new decision is to be entered in accordance with the opinion. This is the opinion of a majority of the court.

*So ordered.*