NANCY E. MUTO & others *vs.* CITY OF SPRINGFIELD
& others.

Hampden.   May 7, 1965. — July 1, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Zoning,* Validity, Spot zoning.

In view of changes in the neighborhood of a city lot located in a single family residence zoning district but adjoining a multiple family residence district, of the uses currently made of properties in the neighborhood, and of differentiation of the lot from other properties on the same street in the single family residence district, a rezoning of the lot placing it in the multiple family residence district was not invalid as spot zoning.

BILL IN EQUITY filed in the Superior Court on June 7, 1963.

The plaintiffs appealed from a final decree entered after hearing by *DeSaulnier, J.*

*Robert A. Gelinas* for the plaintiffs.

*William K. Danaher, Jr.,* for the defendants Crothers.

*James L. Allen,* City Solicitor, for the defendants city of Springfield & others, joined in a brief.

WHITTEMORE, J. The plaintiffs, owners of properties in Springfield near a lot owned by the defendants Clayton M. and Helen M. Crothers, on the southeast corner of Maple Street and Maple Court, sought in the Superior Court a declaration that the rezoning of that parcel (the locus) from Residence A to Residence C was invalid as spot zoning. One significant effect of the change is to allow the construction of a multiple type family dwelling up to six stories in height on a lot theretofore in a district restricted in respect of dwellings to single residences not to exceed two stories and attic in height.[1] Certain other uses additional to those permitted in Residence A and Residence B districts are permitted in Residence C districts.[2]

The judge found that there had been substantial changes in the locus and the neighborhood from 1923 when the zoning ordinance was adopted, when all of Maple Street had been a fine residential street and had been zoned for single residences. He ruled that the rezoning was valid as a logical extension of a Residence C district abutting the rear of the locus. The final decree so declared. The evidence is reported.

An indication of the relation of the locus to the surrounding property and the respective uses is given by the accompanying sketch, and the following descriptive key:

[1] The planning board was informed of the proposal to build an apartment house of 128 units with parking accommodations for 130 cars, using for building about twenty-four per cent of the land area.

[2] In Residence B districts all Residence A uses are permitted and "dwelling, detached, for one or two families, or a pair of semi-detached dwellings for two families" (with certain provisos), and "[p]rivate garages or stables" also with limiting provisos. In Residence C districts, all Residence A and B district uses are permitted and a "building for three or more families, detached, semi-detached or between party walls." Also permitted are "[h]otels, boarding houses, lodging houses, dormitories and convalescent or nursing homes," "[p]rivate garages or stables" with a slightly less restrictive proviso than in the Residence B district, as to use of space and number of vehicles or horses.

*The Locus:* (Rezoned from Residence A to Residence C.)
The main building on this lot is the Crothers residence.    A
carriage shed on the rear portion has been renovated and

is used for a business school.    The small (roughly triangu-
lar) Residence C area at the rear of the locus and of lot Q
is a part of the Crothers property.

A: The house is occupied as a seminary by the Stigmatine Fathers.

B: The house is used as a convalescent home. Three college students are boarders therein.

C: The residence originally on the property was damaged or destroyed by fire and has recently been replaced by a one story commercial type building occupied by the Red Cross.

D, E, F, G, and H: Residences.

I: Approximate location of a dormitory used by the MacDuffie School.

J-M: Four houses in the Residence C district, one being used as a rooming house.

N: The lot is zoned for Commercial A use and the building is used for a typewriter business. The extent of the Commercial A district is not clearly shown in the exhibit from which the sketch is made.

O: On this lot, in the Residence C district, is a house used by the MacDuffie School as a dormitory, cafeteria, and administration building.

P-T: Residences (Residence A district).

The changes in the neighborhood unquestionably justified a zoning reclassification. *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228–229, and cases cited. It is not arbitrary or unreasonable to include such property as the locus in a Residence C zone adjacent to a Residence A zone.

General Laws c. 40A, § 2, requires zoning regulations to be the same for "zones, districts or streets having substantially the same character." The issue is whether the locus is sufficiently differentiated from other properties on Maple Street in the Residence A district to support the reclassification of only this one property. *Noonan* v. *Moulton,* 348 Mass. 633, 639–640, and cases cited. *McHugh* v. *Board of Zoning Adjustment of Boston,* 336 Mass. 682, 689 ("Any substantial differentiation of the locus itself would be of critical significance"). We think this is to be found in the location of the Crothers lot with its long axis on Maple

Court, partly zoned as Residence C and opposite the sizeable commercial type, Red Cross building, and set off from residences to the north by this building and by lots A and B on which the houses are no longer used as private homes. It cannot be said that the other land on Maple Street remaining in the Residence A district is indistinguishable from the locus in character. *Noonan* v. *Moulton, supra,* at pp. 639–640.

The precise location of the boundary between districts is of course within the legislative discretion. *Shapiro* v. *Cambridge,* 340 Mass. 652, 658, and cases cited. See *Elmer* v. *Board of Zoning Adjustment of Boston,* 343 Mass. 24, 35; *Schertzer* v. *Somerville,* 345 Mass. 747, 751. There may, therefore, be some ground in reason for extending the Residence C district to Maple Street along the line of Maple Court.

On its facts this case is only narrowly differentiated from those in which we have ruled a reclassification invalid. *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622, 625. *McHugh* v. *Board of Zoning Adjustment of Boston,* 336 Mass. 682, 688–689. *Shapiro* v. *Cambridge,* 340 Mass. 652, 658–659. *Gricus* v. *Superintendent & Inspector of Bldgs. of Cambridge,* 345 Mass. 687, 690. *Mitchell* v. *Board of Selectmen of South Hadley,* 346 Mass. 158. We think, however, with the judge in the Superior Court, that the determinative rule is that every presumption is to be afforded the validity of the ordinance and if its reasonableness is fairly debatable the judgment of the local authorities should prevail. *Schertzer* v. *Somerville,* 345 Mass. 747, 751, and cases cited.

*Final decree affirmed.*