ARTHUR L. COLEMAN & others *vs.* BOARD OF SELECTMEN OF ANDOVER & another.

Essex.    December 5, 1966. — January 5, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Zoning,* Reclassification, Spot zoning, Boundary.

Where, under a separate warrant article but as part of town meeting action revising the town's zoning by-law and defining by detailed written descriptions the boundaries of the zoning districts, previously difficult to locate with certainty on the basis of imprecise data, there was placed in a business district a lot which was situated near many business activities and was bounded on one side by a street, on two sides by the business zoning district and on one side by a parcel in a residence district having a nonconforming multiple residence on it, and which for many years had been thought to be in the business rather than the residence district, it was held that such business classification of the lot was not spot zoning and was valid, although other land located on the same street and also bounded on two sides by the business district was not placed in the business district.

PETITION for a writ of mandamus filed in the Superior Court on August 3, 1964, against the Board of Selectmen and Inspector of Buildings of Andover.

Joseph F. Barton was allowed to intervene as a petitioner. Arthur A. Collins and Robert E. Wilson were allowed to intervene as respondents. The case was heard by *Thompson,* J.

*Edward A. Gordon* for the petitioners Coleman & others.

*William G. Evans* for the intervening petitioner.

*Fredric S. O'Brien,* Town Counsel, for the respondents Board of Selectmen & another (*Maurice Rappaport,* for the intervening respondents, with him).

Coleman *v.* Board of Selectmen of Andover.

WHITTEMORE, J.   The petitioners seek a writ of mandamus for the enforcement of the zoning by-law of Andover as it stood before the amendment adopted under art. 13 of the warrant for the special town meeting of June 15, 1964.   The amending vote was "to change from Single Residence A to Business" lot 83 on the easterly side of Florence Street.

The judge made no findings and ordered the petition dismissed.   The evidence is before us on the petitioners' appeals.

The evidence tended to show these facts: The zoning by-law, as first adopted in 1936, described the several zones solely by means of a map scaled 800 feet to one inch.   The scale was so small that it was difficult to ascertain the precise location of boundaries.   The planning board, its consultant, the building inspector, and perhaps others concerned had, over a period of years, believed that lot 83 was in the business zone which was adjacent to it on the south and east.   The professional consultant to the planning board had enlarged sections of the map for working purposes.   In his enlargement he had placed lot 83 in the business zone.

The building inspector on January 3, 1963, issued a permit to erect on lot 83 a business office building.   The present petitioners appealed to the board of appeals from the issuance of the permit.   The board, in its decision of February 28, 1963, found that the building inspector, having some doubt notwithstanding the existing enlargement, had scaled the zoning map against the assessors' map and had determined that the district boundary was somewhere ". . . about through the middle of the lot."   The board itself from all the indications on the map, including legends, concluded that the location of the zoning boundary was sufficiently clearly shown to be on the southerly line of lot 83 so that the lot was in the residence district.   The board decided that the permit had been wrongly issued because of the building inspector's honest mistake.   The Superior Court, on an appeal under G. L. c. 40A, § 21, ruled on August 3, 1964, that the board had acted within its authority

and that any business use of the lot violated the by-law. An appeal has been taken to this court but not prosecuted pending the decision in mandamus.

In November, 1963, the owners of lot 83 sought a variance which was denied.

The warrant for the annual town meeting of March, 1964, contained an article for the adoption of written descriptions of the boundaries of the respective zones. The description for the business area at Florence and Park streets included lot 83 in the business district. This description (as with all the business zone descriptions) was drawn to describe the boundaries as the planning board and the consultant understood them to exist. This section of the proposed descriptions was not voted on at the March meeting, having been withdrawn by the planning board.

At the special meeting of June 15, 1964, the town, in addition to rezoning lot 83, adopted under art. 6 a revised zoning by-law. In Section III B the new by-law provided: "The boundaries between districts are located and described by detailed written descriptions on file in the office of the Town Clerk . . . ." The document on file described the Florence and Park Street business district so as to exclude lot 83. The zoning changes at the two meetings accomplished a recodification of the entire by-law.

The planning board's report to the town in respect of art. 13 read: "This article which seeks to include in the business district Lot 83 on the easterly side of Florence Street has been proposed by the Selectmen in an effort to give the voters a chance to solve the problem which has resulted from the uncertainty concerning the precise location of the boundary between the central business district and single residence A in this area. From the planning standpoint, the inclusion of this lot in the business district is reasonable and logical. In the past, the planning board believed that Lot 83 was in the business zone."

There was support in the evidence for the view of the planning board expressed in its report. The lot was bounded on two sides by the business district, on a third

side by the street and on the fourth side by a lot in the residence district on which stood a nonconforming multiple residence, a use more consistent with the uses in a business district. Although residences stood on two lots in the business district next southerly of lot 83, there were many business uses in the neighborhood.

Article 13 was presented separately in order that the rezoning of lot 83, if in fact or law rezoning was required, "would not be hidden in a mass of other lots, other areas."

The order for dismissal of the petition for a writ of mandamus was right. The inadequate zoning map and the resulting uncertainty as to the location of the district boundary at lot 83, as well as action in good faith on the belief that the lot was in the business district, made appropriate new legislative action in respect of its classification. Such action would not have been barred or rendered inappropriate by the court decision that lot 83 was in the residence district, even if that decision had become final.

The circumstances justified consideration of lot 83 apart from other similarly situated lots, as to which the existing zoning classification was not in doubt. The planning consultant found that the particular surroundings of lot 83 such as the nonconforming multiple dwelling to the north gave a basis for reclassifying lot 83 and at the same time not taking like action for a lot across the street which was also bounded on two sides by the business district. His conclusion undoubtedly was in recognition of the circumstance that no location of a district boundary can surely avoid different classifications for some lots near to the boundary that resemble each other in certain material aspects. But the validity of the amendment does not depend on such distinctions between the lots as appear in the evidence. There is no doubt that the town meeting could conclude that the proposed rezoning of lot 83 gave the lot a reasonable zoning classification and also that the rezoning was good planning for the neighborhood and the town. In the light of this, the past uncertainty as to lot 83 gave support to so drawing the line as to put the lot in the business

district notwithstanding that closely similar nearby land was not rezoned.

Thus even had there been no occasion for redefining all boundaries and no action doing so, the record would fail to show that the town had exceeded its statutory authority. See for recent cases restating applicable principles, *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 414; *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228–230; *Rousseau* v. *Building Inspector of Framingham,* 349 Mass. 31, 35; *Halko* v. *Board of Appeals of Billerica,* 349 Mass. 465, 471–472; *Muto* v. *Springfield,* 349 Mass. 479; *Mahoney* v. *Commissioner of Pub. Works of Lowell, post,* 697. Compare *Mitchell* v. *Board of Selectmen of So. Hadley,* 346 Mass. 158, 161. The vote as to lot 83 is, however, properly to be judged as a part of reasonable action to redefine the zoning boundaries. This gives additional support to the challenged vote. Proposing a separate article for the reason stated appears to have been a wise and forthright step which did not take the subject matter out of the general context.

*Order for judgment affirmed.*