CANTEEN CORPORATION vs. CITY OF PITTSFIELD.

Berkshire.    March 9, 1976. — May 5, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Zoning,* Spot zoning, Validity, Reclassification.

Statement of certain principles applicable to amendments of zoning
   ordinances and by-laws. [291-292]
On all the facts, an amendment of a city's zoning ordinance reclassify-
   ing from business to residential several street lots on which busi-
   nesses were conducted and which abutted in the rear a large area
   classified as business and devoted to various business uses was held
   invalid as spot zoning as to two of such street lots. [292-294]

PETITION filed in the Land Court on May 21, 1973.
The case was heard by *Sullivan, J.*
The case was submitted on briefs.
*Charles R. Crimmin & L. George Reder* for the defend-
ant.
*Ronald E. Oliveira & David O. Burbank* for the plaintiff.

HALE, C.J.   This is a petition brought in the Land
Court under the provisions of G. L. c. 240, § 14A, and G. L.
c. 185, § 1(j1/2), to determine the validity of a 1973
amendment of the zoning ordinance of the city of Pittsfield
(city) which reclassified the petitioner's land as residen-
tial. The land affected is located on the easterly side of
Yorkshire Avenue and is shown as lots 284 and 285 on the
accompanying sketch plan. We summarize the facts found
by the Land Court judge.
The city's first zoning ordinance was adopted in 1927.
A 1931 revision of that ordinance classified the area on the
easterly side of Yorkshire Avenue as Business B and the
area on the westerly side as residential. By a 1947 revision
the land north of lot 284 on the easterly side of Yorkshire
Avenue was classified as residential. The land to the rear

(easterly) of the petitioner's property (east of Yorkshire Avenue and north of Dalton Avenue) was classified as C-3 (central business). The petitioner's lots (284 and 285) and the other lots in question (cross-hatched on sketch) were also classified as C-3.

The 1973 amendment, the validity of which is challenged, extended the residential district across Yorkshire Avenue to the easterly boundary lines of lots 284, 285, 286, 14, 14A, 13A, 13B, 13C, 6, and 6A. As a result, the cross-hatched lots were zoned R-12 (single family residence on a 12,000 square foot minimum lot). The area to the east of those lots was zoned B-C (group business).

There is a prefabricated steel building on the petitioner's lots, erected in 1963, from which the petitioner operates a canteen service business. Three other business activities (including a barber shop and a moving and storage business) are conducted on the other lots on the easterly side of Yorkshire Avenue between the petitioner's property and Dalton Avenue. While there is a two-family dwelling and a four-family dwelling in the rezoned area, there are no single family residences in it. The petitioner's premises are abutted to the east by a large parking lot of a local supermarket. A Zayre department store, a Robert Hall clothing store, a service station, a bowling alley and numerous other businesses are also located in the B-C zone. The lots on the westerly side of Yorkshire Avenue are occupied by residences, most of which were constructed in the early 1940's, after commercial development had begun on the easterly side.

The case was tried in the Land Court on May 7 and 8, 1974. After taking a view the judge entered a decision holding that the reclassification of the petitioner's lots by the 1973 zoning ordinance was "violative of uniform classification . . . and is invalid; and that the Pittsfield zoning ordinance is to such extent void and unenforceable." The city appeals.

The test of validity of an amendment of a zoning ordinance or by-law is whether it complies with the terms of the enabling statute. *Lanner* v. *Board of Appeal of Tewks-*

*bury,* 348 Mass. 220, 228 (1964). *Beal* v. *Building Commr. of Springfield,* 353 Mass. 640, 643 (1968). Similarly, a zoning ordinance or by-law may be amended to achieve any of the purposes for which under G. L. c. 40A an ordinance or by-law may be adopted. *Shannon* v. *Building Inspector of Woburn,* 328 Mass. 633, 637-638 (1952). A regulation that is within the scope of the enabling statute may be valid even though it results in hardship to some landowners by depriving them of some beneficial use of their land. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594 (1949).

"A municipality may from time to time reexamine the location of a boundary between districts and shift its location as sound zoning principles dictate." *Schertzer* v. *Somerville,* 345 Mass. 747, 751 (1963), and cases cited. While it is well established that local bodies have wide latitude to determine the particular location of zoning district boundaries, the criteria applicable to a change of established lines may impose limitations not present when zoning is first adopted. *Shapiro* v. *Cambridge,* 340 Mass. 652, 658 (1960). The existing location of a zoning boundary is a circumstance to be weighed. *Schertzer* v. *Somerville, supra,* at 751.

Every presumption is to be made in favor of the validity of an amendment, and if its reasonableness is debatable, the judgment of the local authorities will prevail. *Caires* v. *Building Commr. of Hingham, supra,* at 597 (1949). *Cohen* v. *Lynn,* 333 Mass. 699, 705 (1956). *Crall* v. *Leominster,* 362 Mass. 95, 101 (1972). An amendment will be sustained unless there is no substantial relation between it and the expressed purposes of the zoning act. Conversely, it will be held invalid if it is arbitrary, unreasonable, or substantially unrelated to the public health, safety, convenience, morals or welfare. *Schertzer* v. *Somerville, supra,* at 751.

Viewing the facts in light of the principles stated, we think that the amendment is invalid. The city contends that the change complained of by the petitioner was not an isolated incident but was, rather, part of a comprehensive revision of the prior zoning ordinance. It contends

that an integral part of that revision was the placement
of zoning boundaries between residential and commercial
districts at rear lot lines rather than along the center lines
of streets. However, it was essentially undisputed that
Yorkshire Avenue was the only area in the city where the
boundary between residential and commercial districts
was actually drawn along rear lot lines. The former city
planning director himself testified that the locus was being
treated as a unique area. We believe this extraordinary
treatment of Yorkshire Avenue contravenes the uniformity
requirement of G. L. c. 40A, §2.[1]

"Spot zoning" — singling out a parcel of land for special
treatment as compared to other parcels in the same zoning
district — is unlawful. *Whittemore* v. *Building Inspector
of Falmouth,* 313 Mass. 248, 249 (1943). *McHugh* v. *Board
of Zoning Adjustment of Boston,* 336 Mass. 682, 688-689
(1958). Here, twelve contiguous and apparently homoge-
neous parcels of land were singled out for special treatment
vis-à-vis substantially similar parcels in an adjacent dis-
trict. This is analogous to "spot zoning" and is equally vio-
lative of the principle of uniformity. *Schertzer* v. *Somer-
ville,* 345 Mass. at 752. See *Shapiro* v. *Cambridge,* 340
Mass. at 659. Contrast *Martin* v. *Rockland,* 1 Mass. App.
Ct. 167, 169 (1973).

Our view is supported by *Schertzer* v. *Somerville,* 345
Mass. 747 (1963). In *Schertzer* a parcel of land which had
been commercially zoned since the inception of zoning in
Somerville was adjacent to both commercial and residen-
tial properties. At the behest of owners of the neighboring
residences the property was changed from a commercial
to a residential classification. The Supreme Judicial Court,
in invalidating that rezoning, held that the separation of

---

[1] General Laws c. 40A, § 2 (as in effect prior to St. 1975, c. 808, § 3)
read in pertinent part: "All such [zoning] regulations and restrictions
*shall* be uniform for each class or kind of . . . use, throughout the dis-
trict, but the regulations and restrictions in one district may differ from
those in other districts. Due regard *shall* be paid to the characteristics
of the different parts of the city or town, and the zoning regulations in
any city or town shall be the same for zones, districts or streets having
substantially the same character" (emphasis supplied).

the parcel from similar adjacent business properties at the instigation of citizens who objected to a particular proposed business use constituted arbitrary and unreasonable action.[2] In the present case the judge found that "the area in question directly adjoins an extensive sweep of property exclusively devoted to non-residential purposes which is indistinguishable from the premises." Like *Schertzer,* here the locus had long been zoned for business use.

Although the petitioner bears a heavy burden of proof in attempting to invalidate a zoning by-law as spot zoning (*Crall* v. *Leominster,* 362 Mass. at 103; *Raymond* v. *Building Inspector of Brimfield,* 3 Mass. App. Ct. 38, 43 [1975]), we agree with the judge that the petitioner in this case has met that burden and agree with her ruling that the reclassification of the petitioner's land was violative of uniform classification and hence invalid.

*Decision affirmed.*

---

[2] The city attempts to distinguish *Schertzer* on the ground that in that case the parcel in question was located in an area that was gradually changing from residential to commercial use. It is arguable, however, that no such factual distinction exists because there was evidence in the present case that commercial development in the vicinity both antedated and postdated the residential construction. But even assuming the existence of such a factual distinction, we are not convinced that a result different from that in *Schertzer* is required.