NATIONAL AMUSEMENTS, INC. *vs.* CITY OF BOSTON.[1]

No. 89-P-860.

Suffolk. June 20, 1990. - September 28, 1990.

Present: KASS, SMITH, & IRELAND, JJ.

*Zoning,* Amendment of by-law or ordinance, Validity.

Statement of principles applicable to the consideration of the validity of amendments to zoning ordinances and by-laws. [308-310]

An amendment of the Boston Zoning Code reclassifying from primarily general business to multi-family residential a vacant 13.8 acre tract of land surrounded by active commercial and industrial use was held invalid as having arbitrarily singled out the land in question for disparate treatment from that of similar land in the same zoning area. [310-313]

CIVIL ACTION commenced in the Land Court Department on June 5, 1987.

The case was heard by *Marilyn M. Sullivan,* J.

*John R. Devereaux,* Assistant Corporation Counsel (*Mary Ellen Nolan* with him) for the defendant.

*Robert M. Bonin* (*Thaddeus P. Jankowski* with him) for the plaintiff.

*Saul A. Schapiro, Edward F. Kelly & Margaret M. Wittig,* for Boston Redevelopment Authority, amicus curiae, submitted a brief.

KASS, J. Although all rational presumptions favor the validity of an amendment by a municipality of its zoning code, we decide that the amendment of the Boston Zoning Code presented for review arbitrarily singled out the land of the plaintiff National Amusements, Inc. ("National"), for disparate treatment from similar land in the same zoning area. Accordingly, we affirm the decision of the Land Court judge

---

[1] The Boston Redevelopment Authority filed a brief as amicus curiae urging reversal of the decision of the Land Court.

which came to the same conclusion and adjudged the zoning amendment invalid. National brought its complaint in the Land Court under G. L. c. 185, § 1 (*j½*), and G. L. c. 240, § 14A.

The judge made extensive findings of fact, for which there is support in the record.

### The Locus

National's property consisted of a vacant 13.8 acre tract lying westerly of Veterans of Foreign Wars Parkway ("VFW Parkway") in the West Roxbury section of Boston. In former years, National had used the site for an outdoor movie theater. At the time of the rezoning under review, the locus was zoned for general business (zoning classification B-1), except for a strip around 125 feet deep along VFW Parkway, which was zoned for local business (zoning classification L-.5).

On the easterly boundary of the locus is VFW Parkway and thereafter the B-1 district extends for a considerable distance on the other (i.e., easterly) side of VFW Parkway. In that section of B-1 zone there are a small shopping center (dominated by a Heartland supermarket), office buildings, an apartment condominium, a gas station, a furniture store, an electric power transmission facility (northerly of the railroad tracks), and a nursing home.

Northerly, the locus is bounded by the road bed of the Needham branch of the Massachusetts Bay Transportation Authority commuter railroad, and north of that road bed, in an S-.3 (single residence) district, are the West Roxbury High School and several cemeteries. Northwesterly is a closed city dump site located in an I-2 zoning district (general manufacturing).

Southwesterly of the locus there lies an M-1 district (light manufacturing) in which there are a large United Liquors warehouse, a Yellow Freight Lines truck terminal, a Boston Gas warehouse distribution center, and an industrial facility designated in the record simply as Sybron.

South of the locus, in M-1 and L-.5 zones, there are located a construction company, a manufacturing company, offices for Pizzeria Uno and Look Corporation, a discount li-

quor store, a Chinese restaurant, an International House of Pancakes, and a garden center. Interspersed within the area are six houses, largely used for commercial purposes. Southeasterly, on the other side of VFW Parkway is the West Roxbury Veterans Administration Hospital. On so much of Gardner Street as runs east of VFW Parkway there are houses used as residences.

It will not be lost on the reader that the locus is surrounded — and for some distances — by active commercial use.

### The Zoning History

Under Boston's first comprehensive zoning code, enacted by St. 1924, c. 488, the locus was zoned for industrial use. Sometime prior to 1964 — the record is not specific — the zoning classification pertaining to the locus changed to general business. That use classification was perpetuated in a new zoning code adopted pursuant to St. 1956, c. 665. As previously noted, there was a strip of local business zone parallel to VFW Parkway.

So matters stood when in January, 1986, National began the process of applying for a building permit or permits to build a shopping center on the locus. The shopping center proposal contemplated construction of a 60,000 square-foot Super Stop & Shop, a 55,000 square-foot Channel Home Center, 31,000 square feet of satellite stores, and, of course, parking areas, loading docks, landscaping, and so forth. That use was permissible as matter of right under the B-1 and L-.5 zoning classifications. Reaction by the West Roxbury Neighborhood Council ("WRNC") was adverse, not least of all because the shopping center would compete with indigenous retail stores in West Roxbury. The Gardner Street Neighborhood Association, however, which represented residents nearest to the locus, lined up in favor of the shopping center proposal.

By letter dated April 16, 1986, the mayor of Boston wrote to the director of the Boston Redevelopment Authority

("BRA"), which serves as the planning arm of Boston,[2] about the WRNC's concerns and instructed the director to take the most appropriate and immediate action "necessary to protect the residential and local business district from unwanted large scale commercial development." On May 2, 1986, BRA and WRNC applied to the zoning commission of Boston for a "map change" which would change the zoning classification to R-.5 (two-family residential). An immediate consequence was that the inspectional services department of Boston (ISD) declined to consider National's applications and to issue any permits. Much of this is recounted in some detail in *National Amusements, Inc. v. Commissioner of the Inspectional Serv. Dept. of Boston*, 26 Mass. App. Ct. 80 (1988).

Twice, on June 2, 1986, and June 25, 1986, the zoning commission rejected the proposal to "down zone" to R-.5.[3] On February 6, 1987, the zoning commission enacted an amendment which changed that part of the locus which had been in a B-1 district to an R-.8 district. The R-.8 classification permitted multi-family dwellings and authorized a higher floor area ratio than that in R-.5 zones.[4]

## *The Statutory Framework*

Boston has its own special zoning enabling act, St. 1956, c. 665, which establishes a zoning commission authorized to adopt a zoning code. See *Emerson College v. Boston*, 393 Mass. 303, 306 (1984). See also *Banquer Realty Co. v. Acting Bldg. Commr. of Boston*, 389 Mass. 565, 570-571 (1983). Although unique in procedural and substantive detail, there is much parallelism between the Boston Enabling Act and G. L. c. 40A, the State enabling act, and, in considering the validity of zoning amendments, special permits (called conditional use permits under the Boston zoning act),

---

[2]St. 1960, c. 652, § 12.

[3]A more far-reaching rezoning proposed by the BRA was rejected as well.

[4]Floor area ratio refers to the amount of habitable space which may be built in relation to land area. As the floor area ratio increases, the density of land use increases.

and variances in Boston cases, the courts have looked to principles established in cases decided under G. L. c. 40A. See, e.g., *Co-Ray Realty Co.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103, 109 (1951); *McNeely* v. *Board of Appeal of Boston,* 358 Mass. 94, 101 (1970); *Sherrill House, Inc.* v. *Board of Appeal of Boston,* 19 Mass. App. Ct. 274, 275-277 (1985).

Whether an amendment to the Boston Zoning Code is valid rests, therefore, on familiar principles which pertain generally in the case of zoning by-laws or ordinances. There must be a showing of some substantial relation between the zoning code amendment and the general objectives of the enabling act. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 593-594 (1949). *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 545 (1949). *Schertzer* v. *Somerville,* 345 Mass. 747, 750-751 (1963). *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 228 (1972), cert. denied, 409 U.S. 1108 (1973). Paramount among those objectives is the promotion of the public welfare. *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228 (1964). Every presumption, as we noted at the outset of the opinion, is to be made in favor of the zoning amendment. *Caires* v. *Building Commr. of Hingham, supra* at 595, 597. *Schertzer* v. *Somerville, supra* at 751. *Turnpike Realty Co.* v. *Dedham, supra* at 238. If the reasonableness of a zoning regulation is fairly debatable, the judgment of the local legislative body (here the zoning commission of Boston) should be sustained and the reviewing court should not substitute its own judgment. *Caires* v. *Building Commr. of Hingham, supra* at 594-595. *Aronson* v. *Sharon,* 346 Mass. 598, 602 (1964). *Lanner* v. *Board of Appeal of Tewksbury, supra* at 228. *Addison-Wesley Pub. Co.* v. *Reading,* 354 Mass. 181, 185 (1968). *Crall* v. *Leominster,* 362 Mass. 95, 101 (1972). *MacNeil* v. *Avon,* 386 Mass. 339, 341 (1982). *Marshall* v. *Topsfield,* 13 Mass. App. Ct. 425, 428-429 (1982). Nevertheless, a zoning ordinance or by-law will be held invalid if it is unreasonable or arbitrary, or substantially unrelated to the public health, safety, convenience, morals or

welfare. *Caires* v. *Building Commr. of Hingham*, 323 Mass. at 593. *Schertzer* v. *Somerville*, 345 Mass. at 751. *Canteen Corp.* v. *Pittsfield*, 4 Mass. App. Ct. 289, 292-294 (1976). Despite the heavy momentum in favor of affirmation of local zoning action, the applicable principles are of judicial deference and restraint, not abdication. It is with that approach that we turn to the problem at hand.

### Discussion

What is striking about the record is the absence of analysis of land use planning considerations by municipal authority *before* the decision to change the zoning was taken. Among the considerations to be taken into account are the physical characteristics of the land,[5] its location, size, and the nature of adjoining uses. *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 449 (1949). There were, before the fact of the rezoning, no market studies. In the brief it submitted as amicus curiae, the BRA writes that "[1]and use planning begins with studying and understanding overall developments in a community. Consequently a planning agency needs to study population patterns, economic trends, social developments, and a wide range of other matters impacting its community."[6]

In fulfillment of its self-described assignment, the BRA was singularly inattentive. It produced no information, for example, concerning access to educational facilities, recreational facilities, or public safety services should the locus be used for residential purposes. In view of the heavy surrounding commercial and industrial use and the traffic along VFW

---

[5]Before it had been an outdoor theater, the locus had been a cinder dump for a waste disposal contractor. The Land Court judge found that below the surface of the locus there was a layer eighteen to nineteen feet deep of loose material such as wood, brick, and glass. Below that layer was peat. Any construction would have to be on piles varying in depth from fifty to seventy-five feet.

[6]In 1979, the BRA published a report entitled "West Roxbury/District Profile and Proposed 1979-1981 Neighborhood Improvement Program." At page 15, that report states that a master plan is needed to make recommendations for the reuse of vacant land between Baker Street and Gardner Street along the VFW Parkway. The locus is within that area. No master plan ever materialized.

Parkway, some thought would ordinarily be given to air quality in connection with residential use, but the subject was not discussed.

Had there been a change in land use patterns in the general neighborhood of which the zoning code ought to take account, such a trend would justify a zone change, see *Canteen Corp.* v. *Pittsfield*, 4 Mass. App. Ct. at 292, but, with the single exception of the condominium apartment project across VFW Parkway, the recent construction and land use surrounding the site was consistently commercial and industrial.

Rather, what appears to have occurred is that, in response to the WRNC, the decision to change the zone was made, following which a few fig leaves of rationalization were decorously draped by the BRA around the submission to the zoning commission. These were that "a major general business development on this site would have significant detrimental land use and environmental effects on the surrounding residential area, the VFW Parkway greenbelt and the local business community." As to the local business community, if by that was meant retailers, that interest group was a considerable distance from the locus. The only effect upon retailers in West Roxbury would be competitive, and that is not a proper land use consideration. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 429-430 (1949).

The ostensible concern for the parkway greenbelt has a curious ring because the strip along the parkway was left zoned for local retail, and no effort was made to touch the commercial zoning along the parkway at any point. Equally puzzling is the concern about the effect on surrounding residential areas because there are no residential areas around the locus — the apartment condominium across the VFW Parkway is in a business area — and the inhabitants of the nearest enclave of residential houses, that along Gardner Street on the easterly side of VFW Parkway, had expressed their satisfaction with having the locus used for business purposes. After the zoning commission's initial refusals to change the zoning classification of the locus, the BRA hired a traffic consultant

to beef up its case before the zoning commission. That consultant testified at the trial in the Land Court, adopting the conclusions of a report she had made to the BRA. She thought the use of the locus for retail purposes would burden the traffic on VFW Parkway. The Land Court judge was skeptical of the evidence the consultant gave and expressly found that use of the locus for retail development would not create a gridlock. Certainly, the traffic problem justification raised the question why, if commercial use was to be discouraged along VFW Parkway for traffic control reasons, the business zoning on both sides of the parkway was left unaltered and only the B-1 portion of National's land was changed.

In view of the lack of land use study and the illogic of the ostensible reasons for the rezoning, it is not to be wondered at that the Land Court judge found those reasons to be pretexts, that "the primary motive of the rezoning was to protect small business in the general West Roxbury neighborhood," and that the "surroundings are environmentally unsound for residences." The city argues that the judge led herself astray by focussing on the motives for the zone change. Indeed, there is nothing inherently unlawful in "reactive zoning." Development proposals do act as incentives to reexamination of land use objectives. The point that the judge correctly made, however, is that under our cases zone changes which have no roots in planning objectives but which have no better purpose than to torpedo a specific development on a specific parcel are considered arbitrary and unreasonable. The vice is the singling out of a particular parcel for different treatment from that of the surrounding area, producing, without rational planning objectives, zoning classifications that fail to treat like properties in a uniform manner. *Shapiro* v. *Cambridge*, 340 Mass. 652, 659 (1960).

*Schertzer* v. *Somerville*, 345 Mass. at 752. *Canteen Corp.* v. *Pittsfield*, 4 Mass. App. Ct. at 292-294.[7]

*Judgment affirmed.*

---

[7]The jargon phrase for unlawful singling out of a parcel for different zoning is "spot zoning." We have avoided using the phrase, in part because 13.8 acres constitutes a very large "spot." The size of the spot, however, does not determine whether unlawful zoning has occurred. See *Marblehead* v. *Rosenthal*, 316 Mass. 124, 126 (1944). Compare *Cohen* v. *Lynn*, 333 Mass. 699, 704 (1956).